LYONS, BRANDT, COOK & HIRAMATSU
Attorneys at Law
A Law Corporation

GEORGE W. BRANDT  1181-0
STEFAN M. REINKE  3747-0
BONNIE L. MOORE  7138-0
EDQUON LEE  3845-0
1800 Davies Pacific Center
841 Bishop Street
Honolulu, Hawaii  96813
Telephone:  (808) 524-7030
Facsimile:  (808) 533-3011
E-mail:  gbrandt@lbchlaw.com
         sreinke@lbchlaw.com
         bmoore@lbchlaw.com
         elee@lbchlaw.com

Attorneys for Defendant
RSKCO SERVICES, INC.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| JULIA M. BACKMAN, individually and on Behalf of the ESTATE OF DANIEL VERNON BACKMAN, and as Next Friend to KELLY KEIKO VALENE BACKMAN and JODI LEIGH YACHIYO BACKMAN, Minors, | ) ) ) ) ) ) ) | CIVIL NO. 04-00348 (HG KSC) (Contract) |
| Plaintiffs, | ) ) | MEMORANDUM IN SUPPORT OF DEFENDANT RSKCO SERVICES, INC.'S MOTION FOR SUMMARY JUDGMENT |
| vs. | ) ) | |
| RSKCO SERVICES, INC., a Illinois corporation; JOHN DOES 1-10; JANE DOES 1-10; DOE | ) ) ) ) | |

PARTNERSHIPS 1-10, DOE          )
CORPORATIONS 1-10; DOE          )
LIMITED LIABILITY               )
ENTITIES 1-10; DOE              )
"NON-PROFIT" CORPORATIONS       )
1-10; and DOE GOVERNMENTAL      )
ENTITIES 1-10,                  )
                                )
                   Defendants.  )
_____ )

TABLE OF CONTENTS

I.    INTRODUCTION ........................................................................1

      A.    The Allegations ............................................................1

      B.    The Facts .....................................................................2

II.   THE STANDARD FOR SUMMARY JUDGMENT ..................10

III.  DISCUSSION...........................................................................12

      A.    Plaintiffs Have No Cause Of Action Against RSKCO. ......12

      B.    Plaintiffs' Claims Must Be Dismissed For Failing To
            Produce Expert Testimony Establishing A Breach Of The
            Standard Of Care In Adjusting Mr. Backman's Claim And
            Causation. .....................................................................14

      C.    The Denial Of Dr. Graham's Surgical Request Was Not
            Bad Faith. .....................................................................15

      D.    RSKCO Did Not Act In Bad Faith In Failing To Pay The
            PPD Award. ...................................................................16

      E.    RSKCO Did Not Act In Bad Faith In Failing To Pay
            Benefits In A Timely Manner. ...........................................17

      F.    Plaintiffs' Claims Arising Prior To October 28, 2001 Are
            Barred By The Statute Of Limitations. ...............................18

      G.    Plaintiffs' Claim For Punitive Damages Must Fail As
            RSKCO's Conduct Was Not Unreasonable........................19

IV.   CONCLUSION ........................................................................22

TABLE OF AUTHORITIES

<u>CASES</u>

<u>Best Place, Inc. v. Penn America Insurance Company,</u>
82 Hawaii 120, 920 P.2d 334 (1996) ............................................. 13, 15, 18, 20, 22

<u>Brown v. Clark Equipment Co.,</u>
62 Haw. 530, 618 P.2d 267 (1980) ........................................................................14

<u>California Architectural Bldg. Prod., Inc. v.</u>
<u>Franciscan Ceramics, Inc.,</u> 818 F. 2d 1466 (9th Cir. 1987),
<u>cert.</u> <u>denied</u>, 484 U.S. 1006, 108 S. Ct. 698,
98 L. Ed. 2d 650 (1988) ......................................................................................11

<u>Cammack v. Waihee,</u>
673 F. Supp. 1524 (D. Haw. 1987) ......................................................................11

<u>Celotex Corp. v. Catrett,</u>
477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) ......................................11

<u>Christiansen v. First Insurance Company of Hawaii, Ltd.,</u>
88 Hawai'i 442, 967 P.2d 639 (Hawai'i App. 1998) ...............................................18

<u>Gold v. Harrison,</u>
88 Haw. 94,  962 P.2d 353 (1998) ........................................................................19

<u>Great Hawaiian Fin. Corp. v. AIU,</u>
863 F. 2d 617 (9th Cir. 1988) ..............................................................................10

<u>Herbert A. Sullivan, Inc. v. Utica Mut. Ins. Co.,</u>
439 Mass. 387, 788 N.E.2d 522 (2003) ................................................................14

<u>Masaki v. General Motors Corp.,</u>
71 Haw. 1, 780 P.2d 566, 575 (1989) ...................................................................20

<u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,</u>
475 U.S. 574, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986) ......................................10

<u>Meineke v. GAB Business Services, Inc.,</u>
195 Ariz. 564, 991 P.2d 267 (2000) .....................................................................13

Mock v. Michigan Millers Mut. Ins. Co.,
4 Cal. App. 4th 306, 5 Cal. Rptr. 2d 594 (1992) ...................................................21

Neal v. Farmers Ins. Exch.,
21 Cal. 3d 910, 148 Cal. Rptr. 389,
582 P.2d 980 (1978) ...................................................................................................14

Phelps v. Provident Life and Acc. Ins. Co.,
60 F. Supp. 2d 1014 (C.D. Cal. 1999) ......................................................19, 20, 21

Sanchez v. Lindsey Morden Claims Services, Inc.,
72 Cal. App. 4th 249, 84 Cal. Rptr. 2d 799 (1999) .................................................12

Tomaselli v. Transamerica Ins. Co.,
25 Cal. App. 4th 1269, 31 Cal. Rptr. 2d 433 (1994) .......................................21, 22

UCSF Stanford Health Care v. Hawaii
Management Alliance Benefits & Servs., Inc.,
58 F. Supp. 2d 1162 (D. Haw. 1999) ......................................................................12

STATUTES

Hawaii Revised Statutes
Section 657-7 (1993) ..................................................................................................18

RULES

Rule 56(c) of the Federal Rules of Civil Procedure ...............................................10

MEMORANDUM IN SUPPORT OF DEFENDANT RSKCO
SERVICES, INC.'S MOTION FOR SUMMARY JUDGMENT

COMES NOW Defendant RSKCO Services, Inc. ("RSKCO"), by and through its attorneys, Lyons, Brandt, Cook & Hiramatsu, and hereby submits its Memorandum in Support of Motion for Summary Judgment.

## I.    INTRODUCTION

A.    The Allegations

Plaintiffs JULIA M. BACKMAN, individually and on Behalf of the ESTATE OF DANIEL VERNON BACKMAN ("Mr. Backman"), and as Next Friend to KELLY KEIKO VALENE BACKMAN and JODI LEIGH YACHIYO BACKMAN, Minors (collectively referred to as "Plaintiffs," unless referred to individually), filed their Complaint on October 29, 2003.  Defendant's Concise Statement of Facts ("DCSF"), No. 1, Ex. 1.

Plaintiffs filed a First Amended Complaint ("Amended Complaint") on November 26, 2003.  DCSF No. 2, Ex. 2.  Plaintiffs alleged that they suffered damages as a result of bad faith insurance claims practices of RSKCO in the handling of the workers' compensation claim of Mr. Backman and that there was an insurance contract giving rise to a duty to act in good faith.  DCSF No. 3.

Plaintiffs allege that Mr. Backman died as a result of RSKCO's failure to timely respond to a request for surgery and later denying the surgical request

which compelled Mr. Backman to seek a hearing with the Department of Labor

and Industrial Relations, Disability Compensation Division ("DCD").  DCSF

No. 4, Ex. 2.

       After Mr. Backman's death, Plaintiffs allege that RSKCO improperly

failed to pay benefits awarded by the DCD in a June 25, 2003 Decision.  DCSF

No. 5, Ex. 2.

       B.    <u>The Facts</u>

       On February 8, 1999, Mr. Backman complained of neck pain while at

work and filed a claim with his employer, First Insurance Company of Hawaii, Ltd.

("First Insurance").  DCSF No. 6, Ex. 3.

       RSKCO was not an insurance company.  RSKCO was a claim

adjusting company that handled certain claims for some insurance companies and

certain employers.  DCSF No. 7.  When Mr. Backman's workers' compensation

claim was initially filed, RSKCO informed both Mr. Backman and the DCD that it

was the insurance adjusting company representing the employer in Mr. Backman's

workers' compensation claim.  DCSF No. 8, Ex. 4 & 5.

       Continental Casualty Company ("Continental Casualty") was the

workers' compensation insurance carrier as set forth in the annual WC-3 Carrier's

Case Reports filed with the DCD.  DCSF No. 9, Ex. 6 & 7.  RSKCO did work for

Continental Casualty and for many other insurance companies and for employers who were self-insured.  DCSF No. 10.

On March 9, 1999, Mr. Backman underwent a cervical fusion at the C4-5 level of his cervical spine with Dr. Terry Smith.  DCSF No. 11, Ex. 8.

On February 8, 2000, David Robinson, Esq., entered an appearance as counsel for Mr. Backman.

By December 27, 2000, RSKCO retained the law firm of Wong, Oshima & Kondo ("WOK") to represent it in the handling of Mr. Backman's workers' compensation claim.  DCSF No. 12, Ex. 9 & 10.

Subsequently, Mr. Backman was referred to Dr. Jon Graham for an evaluation of his condition.  On January 16, 2001, Dr. Graham submitted a request for surgery for a microforaminotomy at the C4-5 level.  DCSF No. 13, Ex. 11.

On January 17, 2001, RSKCO referred the surgical request to WOK. DCSF No. 14, Ex. 12.

On January 19, 2001, WOK wrote to Dr. Graham inquiring as to the necessity of surgery at the C4-5 since there were no changes reported in the MRI studies.  A copy of the letter was sent to Mr. Robinson.  DCSF No. 15, Ex. 13.

On January 19, 2001, WOK wrote to Dr. Peter Diamond requesting that he review Dr. Graham's surgical request.  DCSF No. 16, Ex. 14.

On January 23, 2001, Dr. Graham wrote to WOK advising that surgery at the C4-5 could help Mr. Backman's neck and left arm pain and enclosed his chart notes.

On January 26, 2001, Dr. Diamond requested additional medical information since it was unclear how Dr. Graham selected the C4-5 level for the surgical procedure. DCSF No. 17, Ex. 15.

On January 30, 2001, WOK provided Dr. Diamond with Dr. Graham's letter and chart notes. DCSF No. 18, Ex. 16.

On January 31, 2001, Mr. Robinson wrote to WOK requesting information so he could determine whether a denial of the surgical request had been made and whether he should request a hearing on this issue. DCSF No. 19, Ex. 17.

On February 14, 2001, WOK provided Mr. Robinson with the requested information. WOK informed Mr. Robinson that they would advise him of the decision regarding Dr. Graham's surgical request after Dr. Diamond completed his review of the records. DCSF No. 20, Ex. 18.

On March 7, 2001, Dr. Diamond completed his report to WOK. Dr. Diamond opined that he could not determine whether additional surgery at the C4-5 was necessary. Dr. Diamond noted that the radiologist opined that there was no central canal stenosis while Dr. Graham opined that there was stenosis.

Dr. Diamond recommended that a neuroradiologist review the MRI films and that EMG studies be conducted to pinpoint the source of Mr. Backman's complaints of pain.  DCSF No. 21, Ex. 19.

On March 14, 2001, WOK informed RSKCO of Dr. Diamond's opinion and recommendations.  WOK advised RSKCO that the DCD could rule that the EMG and review of the MRI were necessary to determine whether surgery was appropriate.  DCSF No. 22, Ex. 20.

On March 16, 2001, RSKCO informed WOK to contact Mr. Robinson to request a review of the MRI and the need for an EMG test.  DCSF No. 23, Ex. 21.

On April 11, 2001, WOK provided Mr. Robinson with a copy of Dr. Diamond's March 7, 2001 report regarding the surgical request and requested that EMG studies be conducted and the MRI reviewed by a neuroradiologist. DCSF No. 24, Ex. 22.

On April 17, 2001, Mr. Robinson provided Dr. Diamond's report to Dr. Graham.  On May 1, 2001, Dr. Graham responded to Mr. Robinson and recommended that the MRI be reviewed by Dr. Holmes but advised that he did not agree with the necessity of the EMG tests.  DCSF No. 25, Ex. 23.

On April 27, 2001, WOK requested that Dr. Stephen Holmes, a neuroradiologist, review the MRI films.  DCSF No. 26, Ex. 24.

On May 3, 2001, Mr. Robinson withdrew as Mr. Backman's attorney.

On June 6, 2001, Dr. Holmes opined that surgery at the C4-5 level was not necessary.  DCSF No. 27, Ex. 25.

On June 12, 2001, WOK recommended to RSKCO that Dr. Graham's surgical request be denied.  DCSF No. 28, Ex. 26.

On June 22, 2001, WOK advised Mr. Backman that it was denying Dr. Graham's surgical request based upon the opinions of Drs. Diamond and Holmes.  A copy of the denial was provided to Dr. Graham.  DCSF No. 29, Ex. 27.

On July 11, 2001, Leroy T. Kuwasaki Jr., Esq., entered an appearance as Mr. Backman's attorney and requested a hearing at the DCD on the denial of Dr. Graham's surgical request.

A hearing was held on September 25, 2001.  At the hearing, Mr. Kuwasaki argued that RSKCO failed to deny the surgical request within 7 days pursuant to Section 12-15-51 of the Workers' Compensation Medical Fee Schedule Administrative Rules.  On October 29, 2001, the DCD issued a decision approving the surgical request for surgery at the C4-5 based upon a review of all the medical reports.  DCSF No. 30, Ex. 28.

On November 14, 2001, Dr. Graham re-examined Mr. Backman. Dr. Graham decided to order additional radiology studies before deciding whether to operate.  During the examination, Dr. Graham noted chronic C5 radiculopathy

on the left with recent onset of C3-4 radiculopathy.  Dr. Graham testified that there

was a possibility of another level, the C3-4, being involved.  At that time,

Dr. Graham did not know if he would have recommended surgery at the C3-4 and

C4-5 levels.  DCSF No. 31, Ex. 29.

Mr. Backman was to see Dr. Graham on January 2, 2002 but died on

that day.  DCSF No. 32, Ex. 29.

Dr. Graham testified that he does not know whether he would have

recommended surgery to Mr. Backman because he was unable to see and examine

Mr. Backman after the radiology studies were completed.  DCSF No. 33, Ex. 29.

On April 29, 2003, a hearing was held at the DCD to determine what

benefits Mr. Backman's family, Plaintiffs in this case, were entitled to receive as a

result of his death.  The Decision was issued on June 25, 2003 awarding workers'

compensation death benefits, permanent partial disability ("PPD") benefits and

disfigurement benefits to Plaintiffs.  DCSF No. 34, Ex. 30.

On May 31, 2003, Continental Casualty sold all the common stock of

RSKCO to Cunningham Lindsey U.S., Inc. ("Cunningham Lindsey").  After the

sale, employees of Continental Casualty took over from employees of RSKCO the

responsibility of handling Mr. Backman's workers' compensation claim.  DCSF

No. 35.

Continental Casualty appealed the June 25, 2003 Decision to the Labor and Industrial Relations Appeals Board ("LAB").

On July 24, 2003, Continental Casualty filed a Motion for Stay of Payments. After a hearing, on August 29, 2003, the LAB ordered that payment of PPD benefits be stayed. DCSF No. 36, Ex. 31.

On November 19, 2003, the LAB issued a Decision and Order ("D&O"). The D&O was subsequently amended on June 30, 2004. The Amended D&O found that the DCD erred in awarding PPD benefits to Plaintiffs. DCSF No. 37, Ex. 32.

The workers' compensation case was remanded to the DCD for determination on the issue of penalties against First Insurance for failing to make timely payment of workers' compensation death benefits and disfigurement benefits to Plaintiffs. On February 11, 2004, the DCD issued a decision imposing a 20% penalty on First Insurance for untimely payment of benefits. The DCD found that certain workers' compensation benefits should have been paid to Plaintiffs within 31 days of August 29, 2003, but payment was not made until October 3, 2003. DCSF No. 38, Ex. 33.

On July 30, 2004, Plaintiffs appealed the D&O to the Hawaii Supreme Court. On November 4, 2004, the Hawaii Supreme Court dismissed Plaintiffs' appeal for lack of appellate jurisdiction.

On December 15, 2005, a hearing was held at the DCD to determine whether Plaintiffs should be awarded penalties for late payment of benefits. Employer had a part-time adjuster assigned to this workers' compensation claim. The new adjuster was tardy in sending out the benefit checks.  The last check mailed to Plaintiffs was dated September 2, 2005.  Plaintiffs did not receive another check until October 20, 2005.  On January 30, 2006, the DCD imposed a 20% penalty for this late payment.  DCSF No. 39, Ex. 34.

The workers' compensation case is presently pending before the LAB.

RSKCO retained Robert Kessner, Esq., as its standard of care expert. Mr. Kessner opined that RSKCO met the standard of care in adjusting Mr. Backman's workers' compensation claim.  RSKCO appropriately retained WOK.  RSKCO provided Dr. Graham's surgery request to WOK in a timely manner.  Since Mr. Backman had a previous surgery at the C4-5 level, it was appropriate for RSKCO to follow WOK 's advice to have the surgical request reviewed by Dr. Diamond and, subsequently, by Dr. Holmes.  It was appropriate to deny the surgical request after both Drs. Diamond and Holmes opined that it was not necessary.  There was no delay in denying Dr. Graham's surgical request since WOK acted diligently in requesting Drs. Diamond and Holmes to review the surgical request.  DCSF No. 40.

Mr. Kessner also opined that there was no bad faith in failing to pay PPD benefits since the LAB found that Plaintiffs were not entitled to receive both PPD and death benefits.  DCSF No. 41.

Plaintiffs failed to disclose their experts by the January 16, 2006 deadline set by the court's Second Amended Rule 16 Scheduling Order.

II.        THE STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.  Federal Rules of Civil Procedure ("FRCP") Rule 56(c).  The moving party has the burden of demonstrating that there is no genuine issue as to any material fact relative to the claim or defense and that the party is entitled to judgment as a matter of law.  Great Hawaiian Fin. Corp. v. AIU, 863 F. 2d 617, 619 (9th Cir. 1988) (citation omitted).  No genuine issue of fact exists "where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87, 106 S. Ct. 1348, 1355-56, 89 L. Ed. 2d 538 (1986) (citation omitted).

The moving party need not produce evidence negating the existence of an element for which the opposing party will bear the burden of proof at trial, but need only point out to the court the absence of evidence to support the opponent's claims. Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986). Once the movant has met its burden, the opposing party has the affirmative burden of coming forward with specific facts evidencing a genuine issue for trial. Cammack v. Waihee, 673 F. Supp. 1524, (D. Haw. 1987), quoting FRCP 56(e) . Moreover, "if the factual context makes the non-moving party's claim implausible, that party must come forward with more persuasive evidence than would otherwise be necessary to show that there is a genuine issue for trial." California Architectural Bldg. Prod., Inc. v. Franciscan Ceramics, Inc., 818 F. 2d 1466, 1468 (9th Cir. 1987), cert. denied, 484 U.S. 1006, 108 S. Ct. 698, 98 L. Ed. 2d 650 (1988).

If the moving party meets its burden, then the opposing party may not defeat a motion for summary judgment in the absence of any significant probative evidence tending to support his legal theory. The opposing party cannot stand on his pleadings, nor can he simply assert that he will be able to discredit the movant's evidence at trial. Similarly, legal memoranda and oral argument are not evidence and do not create issues of fact capable of defeating an otherwise valid motion for summary judgment. Moreover, "if the factual context makes the nonmoving

party's claim implausible, that party must come forward with more persuasive

evidence than would otherwise be necessary to show that here is a genuine issue

for trial."  <u>UCSF Stanford Health Care v. Hawaii Management Alliance Benefits &</u>

<u>Servs., Inc.</u>, 58 F. Supp. 2d 1162, 1166 (D. Haw. 1999) (Ezra, J.).


III.        <u>DISCUSSION</u>

    A.    <u>Plaintiffs Have No Cause Of Action Against RSKCO.</u>

    Continental Casualty was the workers' compensation insurance carrier

for Mr. Backman's workers' compensation claim.  RSKCO was not an insurance

company and did not issue the insurance policy involved in Mr. Backman's

workers' compensation claim.  RSKCO was a claim adjusting company retained to

represent First Insurance and Continental Casualty in the workers' compensation

case.

    An independent adjuster owes no duty of care to the claimant insured.

The adjuster owes a duty to the insurer who engaged him.  An independent adjuster

has no liability for bad faith.  <u>Sanchez v. Lindsey Morden Claims Services, Inc.</u>,

72 Cal. App. 4th 249, 84 Cal. Rptr. 2d 799 (1999).  The law of agency requires a

duty of absolute loyalty of the adjuster to the insurer.  Creating a separate duty

from the adjuster to the insured would thrust the adjuster into an irreconcilable

conflict between such duty and the adjuster's duty towards the insurer.

Meineke v. GAB Business Services, Inc., 195 Ariz. 564, 567, 991 P.2d 267, 270 (2000).

The Hawaii Supreme Court has characterized the tort of bad faith as "a separate and distinct wrong which results from the breach of a duty imposed as a consequence of the relationship established by contract." Best Place, Inc. v. Penn America Insurance Company, 82 Hawaii 120, 131, 920 P.2d 334, 345 (1996).

In the instant case, RSKCO was a claim adjusting company that did work for Continental Casualty but also for many other insurance companies and for employers who were self-insured. There is no privity between RSKCO and Plaintiffs. The only recognized contractual relationship is Mr. Backman's status as an intended third-party beneficiary of First Insurance's insurance contract with Continental Casualty.

Assuming the Court finds that a duty exists between RSKCO and Mr. Backman, Count II of the Amended Complaint for breach of contract must be dismissed since there was no contract between Mr. Backman and RSKCO.

Accordingly, Plaintiffs cannot maintain an action against RSKCO because no duty existed between RSKCO and Plaintiffs.

B.    Plaintiffs' Claims Must Be Dismissed For Failing To Produce
Expert Testimony Establishing A Breach Of The Standard Of
Care In Adjusting Mr. Backman's Claim And Causation.

Generally, expert testimony is required to establish a breach of the

standard of care unless the issues are within the common knowledge of the jurors.

Brown v. Clark Equipment Co., 62 Haw. 530, 537, 618 P.2d 267 , 272 (1980).

Expert testimony is required to establish the standard of care of an adjuster because

it would likely require analysis of standard industry practices.  Herbert A.

Sullivan, Inc. v. Utica Mut. Ins. Co., 439 Mass. 387, 788 N.E.2d 522 (2003).  A lay

jury, in assessing the conduct and motives of an insurance company in denying

coverage under its policy, could benefit from the opinion of an expert who, by

profession and experience, was peculiarly equipped to evaluate such matters in the

context of similar disputes.  Neal v. Farmers Ins. Exch., 21 Cal. 3d 910, 924,

148 Cal. Rptr. 389, 582 P.2d 980 (1978).

In the instant case, Hawaii's workers' compensation law is complex in

its application to industrial injuries.  A lay jury would generally have no experience

or knowledge of the intricacies of adjusting a claim and reviewing such things as a

request for surgery.  For example, under Hawaii's workers' compensation law, a

request for surgery must specify the location of the surgery, and a general request

for neck surgery is not sufficient because Hawaii's workers' compensation law

deals with specific discrete injuries to different body parts. Therefore, expert testimony is required to establish the standard of care applicable to an adjuster.

Plaintiffs have failed to present any expert testimony that RSKCO breached the standard of care applicable to a workers' compensation adjuster in adjusting Mr. Backman's claim. The only expert testimony is from Mr. Kessner that the standard of care was met.

Furthermore, Plaintiffs do not have any expert testimony establishing that RSKCO's conduct caused Mr. Backman's death. Therefore, Plaintiffs cannot prove that RSKCO caused their damages.

As a result, Plaintiffs cannot meet their burden of proving RSKCO acted improperly and in bad faith, and Plaintiffs' claims should be dismissed.

C.    The Denial Of Dr. Graham's Surgical Request Was Not Bad Faith.

An erroneous decision not to pay benefits under a policy does not, by itself, justify an award of compensatory damages. Rather, the decision not to pay must be in bad faith. Best Place, Inc. v. Penn America Insurance Company, 82 Hawaii at 133, 920 P.2d at 347.

In the instant case, the decision to obtain second opinions from Drs. Diamond and Holmes was not bad faith. There was a legitimate concern that surgery at the C4-5 site, which was previously operated upon, was not the appropriate site to alleviate Mr. Backman's complaints of pain. With the exception

of Dr. Graham, all the physicians who have evaluated Mr. Backman and the radiology studies concluded that surgery at the C4-5 level was not appropriate. Mr. Backman was represented by counsel through May 3, 2001 and could have requested a DCD hearing to compel a decision if RSKCO or WOK was acting unreasonably in determining whether to approve or deny the surgical request. In fact, Dr. Graham recommended that Dr. Holmes review the MRI films to determine whether surgery was necessary.

After Dr. Holmes issued his report disputing the need for surgery, the surgical request was promptly denied. Given these facts, a reasonable jury cannot conclude that RSKCO acted in bad faith in the handling of the surgical request.

### D.    RSKCO Did Not Act In Bad Faith In Failing To Pay The PPD Award.

RSKCO appealed the DCD decision awarding Plaintiffs both PPD benefits and death benefits. The LAB reversed the DCD and agreed with RSKCO that Plaintiffs were not entitled to PPD benefits.

Therefore, the non-payment of the PPD benefits cannot form the basis of Plaintiffs' bad faith claims, and the claims for delayed payment of PPD benefits must be dismissed.

E.     RSKCO Did Not Act In Bad Faith In Failing To Pay Benefits In
       A Timely Manner.

Plaintiffs alleged bad faith arising from the failure to pay benefits in a timely manner. The specific payments are (1) the benefits that were due within 31 days of August 29, 2003, which would be September 29, 2003, and (2) the benefits that were due for September and October 2005.

It is undisputed that the benefits that were due by September 29, 2003 were paid by Continental Casualty on October 3, 2003. Basically, the payment was four days late.

The semi-monthly payments for benefits due in September and October 2005 were paid by Continental Casualty on October 20, 2005. The payments were between two and six weeks late.[1]

There is no evidence that the late payments were due to any bad faith on the part of RSKCO. Even if RSKCO had still been handling the claim in October 2003 -- which it was not -- a reasonable jury cannot find under these circumstances that these short delays constitute bad faith.

Accordingly, Plaintiffs bad faith claim for the alleged late payment of benefits should be dismissed.

---

[1] The DCD assessed a 20% penalty against Continental Casualty for the minor delays in paying the 2003 and 2005 benefits. The penalty was paid to Plaintiffs.

F.    Plaintiffs' Claims Arising Prior To October 28, 2001 Are Barred
      By The Statute Of Limitations.

"The logical result of the holding in <u>Best Place</u> is that a limitation

provision provided for in an insurance policy does not apply to an action in bad

faith.  As such, we hold that because an action for bad faith is an independent tort,

the proper limitation provision should not be that provided in the policy, but rather,

that provided in the state statute of limitations, Hawaii Revised Statutes Section

657-7 (1993), which limits causes of action for torts to two years."  <u>Christiansen v.</u>

<u>First Insurance Company of Hawaii, Ltd.</u>, 88 Hawai'i 442, 450, 967 P.2d 639, 647

(Hawai'i App. 1998).

In Count I of the Amended Complaint, Plaintiffs allege that they

sustained damages in part because RSKCO failed to timely respond to

Dr. Graham's surgical request which was submitted on January 16, 2001.  The

surgical request was denied on June 22, 2001.  The alleged "bad faith" conduct of

allegedly delaying a decision and denying the surgical request took place between

January 16 and June 22, 2001.

Plaintiffs initially filed their lawsuit on October 29, 2003.  As a result,

the alleged bad faith cause of action, arising from Dr. Graham's surgical request or

other conduct occurring prior to October 29, 2001, is barred by HRS § 657-7.

G.    Plaintiffs' Claim For Punitive Damages Must Fail As RSKCO's
Conduct Was Not Unreasonable.

In Count V of the Amended Complaint, Plaintiffs allege that they are

entitled to punitive damages.

First, as with the claims for intentional and negligent infliction of

emotional distress, a claim for punitive damages is a derivative claim, dependent

on the existence of a viable cause of action against RSKCO for a breach of the

implied covenant of good faith and fair dealing (bad faith). Gold v. Harrison,

88 Haw. 94, 103, 962 P.2d 353, 362 (1998). Thus, if the Court grants summary

judgment as to the claim from which this theory of liability is derived, then

summary judgment in favor of RSKCO as to the punitive damages claim is

appropriate also. Being derivative in nature, such claim does not arise and cannot

be maintained independent of the other claim and, therefore, must fail. Phelps v.

Provident Life and Acc. Ins. Co., 60 F. Supp. 2d 1014, 1024-1025 (C.D. Cal. 1999)

(in bad faith litigation, summary adjudication can also be appropriate with respect

to a plaintiff's claims for punitive damages).

Second, even if summary judgment is not granted to RSKCO

regarding the bad faith claim, this claim fails because Plaintiffs cannot establish

that RSKCO's conduct warrants an award of punitive damages. For all punitive

damage claims Hawaii adopts the clear and convincing standard of proof. The

plaintiff must prove by clear and convincing evidence that the defendant has acted

wantonly or oppressively or with such malice as implies a spirit of mischief or criminal indifference to civil obligations, or where there has been some wilful misconduct or that entire want of care which would raise the presumption of a conscious indifference to consequences.  Masaki v. General Motors Corp., 71 Haw. 1, 16-17, 780 P.2d 566, 575 (1989).

In Best Place, Inc., the Court held that claims for punitive damages would be allowed in bad faith tort causes of action based on the breach of the implied covenant of good faith and fair dealing but that such damages could only be awarded if the evidence reflects "something more" than the conduct necessary to establish the tort.  More specifically, the court held that the plaintiff must prove by clear and convincing evidence that the defendant acted wantonly or oppressively or with such malice as implies a spirit of mischief or criminal indifference to civil obligations, or where there has been some willful misconduct or that entire want of care which would raise the presumption of a conscious indifference to consequences.  Best Place, Inc., 82 Haw. at 134, 920 P.2d at 348.

By retaining WOK and seeking independent medical opinions regarding the necessity of surgery as described above, RSKCO's actions cannot be deemed unreasonable, and, where the insurer did not act with bad faith then it obviously did not act with "malice," "oppression," or "fraud."  As stated by the District Court for the Central District of California in Phelps v. Provident Life and

Acc. Ins. Co., 60 F. Supp. 2d 1014, 1025 (C.D. Cal. 1999), if "the facts of [a] case do not give rise to a breach of the duty of good faith and fair dealing, this Court cannot find that these same facts establish clear and convincing evidence of oppression, fraud, or malice."

Even when there is a violation of the duty of good faith and fair dealing, the award of punitive damages is not automatic.  "In order to establish that an insurer's conduct has gone sufficiently beyond mere bad faith to warrant a punitive damage award, it must be shown by clear and convincing evidence that the insurer has acted maliciously, oppressively or fraudulently."  Mock v. Michigan Millers Mut. Ins. Co., 4 Cal. App. 4th 306, 328, 5 Cal. Rptr. 2d 594 (1992). Indeed, in Tomaselli v. Transamerica Ins. Co., 25 Cal. App. 4th 1269, 1281, 31 Cal. Rptr. 2d 433 (1994), even though the court found sufficient evidence to support the jury's finding of "bad faith," the court reversed the jury's award of punitive damages, stating:

> [T]he actions of [the insurer] may be found to be negligent (failing to follow-up information provided by the insured), overzealous (taking an unnecessary deposition under oath of the insured), legally erroneous (relying on an endorsement which was not shown to have been delivered), and callous (failing to communicate). There was nothing done, however, which could be described as evil, criminal, recklessly indifferent to the rights of the insured, or with a vexatious intention to injure.  There is simply no evidence supporting a punitive damage award in this case....

<u>Tomaselli v. Transamerica Ins. Co.</u>, 25 Cal. App. 4th at 1288, 31 Cal. Rptr. 2d 433.

      In the instant case, Plaintiffs cannot produce clear and convincing evidence that RSKCO acted wantonly or oppressively or with such malice as implies a spirit of mischief or criminal indifference to civil obligations, or engaged in willful misconduct or an entire want of care which would raise the presumption of a conscious indifference to consequences. To the contrary, it is readily apparent that RSKCO acted reasonably in its investigation and in reaching its determination to deny Dr. Graham's surgical request. The delay in payment of workers' compensation benefits was not so egregious to constitute willful and wanton conduct. Plaintiff's claim for punitive damages therefore must fail. <u>Best Place, Inc.</u>, 82 Haw. at 134, 920 P.2d at 348.

IV.      <u>CONCLUSION</u>

      For all of the reasons set forth above, RSKCO submits that, as a matter of law, it is entitled to judgment as to all of the causes of action which Plaintiffs have asserted. RSKCO respectfully requests that this Court enter summary judgment in its favor and against Plaintiffs and award RSKCO its attorneys' fees and costs incurred in connection with this action.

Alternatively, RSKCO requests partial summary judgment on

Plaintiffs' causes of action for breach of contract, bad faith and punitive damages.

DATED:  Honolulu, Hawaii, February 15, 2006.

/s/ Edquon Lee
GEORGE W. BRANDT
STEFAN M. REINKE
BONNIE L. MOORE
EDQUON LEE
Attorneys for Defendant
RSKCO SERVICES, INC.