LYONS, BRANDT, COOK & HIRAMATSU
Attorneys at Law
A Law Corporation

GEORGE W. BRANDT  1181-0
STEFAN M. REINKE  3747-0
BONNIE L. MOORE  7138-0
EDQUON LEE  3845-0
1800 Davies Pacific Center
841 Bishop Street
Honolulu, Hawaii  96813
Telephone:  (808) 524-7030
Facsimile:  (808) 533-3011
E-mail:  gbrandt@lbchlaw.com
          sreinke@lbchlaw.com
          bmoore@lbchlaw.com
          elee@lbchlaw.com

Attorneys for Defendant
RSKCO SERVICES, INC.

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| JULIA M. BACKMAN, individually ) | CIVIL NO. 04-00348 (HG KSC) |
| and on Behalf of the ESTATE OF     ) | (Contract) |
| DANIEL VERNON BACKMAN, and) | |
| as Next Friend to KELLY KEIKO     ) | DEFENDANT RSKCO |
| VALENE BACKMAN and JODI     ) | SERVICES, INC.'S CONCISE |
| LEIGH YACHIYO BACKMAN,     ) | STATEMENT OF FACTS |
| Minors,                                          ) | |
|                                                      ) | |
|                         Plaintiffs,          ) | |
|                                                      ) | |
|             vs.                                  ) | |
|                                                      ) | |
| RSKCO SERVICES, INC., a Illinois ) | |
| corporation; JOHN DOES 1-10;     ) | |
| JANE DOES 1-10; DOE                  ) | |

PARTNERSHIPS 1-10, DOE            )
CORPORATIONS 1-10; DOE            )
LIMITED LIABILITY                 )
ENTITIES 1-10; DOE                )
"NON-PROFIT" CORPORATIONS         )
1-10; and DOE GOVERNMENTAL        )
ENTITIES 1-10,                    )
                                  )
                  Defendants.     )
_____      )

## DEFENDANT RSKCO SERVICES, INC.'S CONCISE STATEMENT OF FACTS

Pursuant to Rule 56.1 of the Local Rules of Practice for the United

States District Court for the District of Hawaii, Defendant RSKCO

SERVICES, INC. hereby submits its Concise Statement of Facts in Support of its

Motion for Summary Judgment.

| Facts | Evidentiary Support |
|---|---|
| 1.  Plaintiffs filed their Complaint on October 29, 2003. | Complaint (Exhibit "1") |
| 2.  Plaintiffs filed a First Amended Complaint ("Amended Complaint") on November 26, 2003. | First Amended Complaint (Exhibit "2") |
| 3.  Plaintiffs alleged they suffered damages as a result of bad faith insurance claims practices of RSKCO and that there was an insurance contract giving rise to a duty to act in good faith. | See ¶¶ 1, 41 & 42 of Amended Complaint (Exhibit "2") |
| 4.  Plaintiffs allege Mr. Backman died as a result of RSKCO's failure to timely respond to a request for surgery and later denying the surgical request. | See ¶¶ 27-34 of Amended Complaint (Exhibit "2") |
| 5.  Plaintiffs allege that RSKCO improperly failed to pay benefits awarded in the DCD Decision. | See ¶ 35 of Amended Complaint (Exhibit "2") |

| Facts | Evidentiary Support |
|---|---|
| 6. On February 8, 1999, Mr. Backman complained of neck pain and filed a claim with his employer, First Insurance Company of Hawaii, Ltd. | See WC-1 Employer's Report of Industrial Injury (Exhibit "3") |
| 7. RSKCO was not an insurance company. RSKCO was a claim adjusting company that handled certain claims for some insurance companies and certain employers. | See ¶ 4 of the Declaration of Julie Hotz ("Hotz Declaration") |
| 8. RSKCO informed Mr. Backman and the DCD that it was the insurance adjusting company representing the employer. | See letters to DCD and Mr. Backman (Exhibits "4" & "5") |
| 9. Continental Casualty Company was the workers' compensation insurance carrier. | See WC-3 (Exhibits "6" & "7"); and ¶ 4 of the Hotz Declaration |
| 10. RSKCO did work for Continental Casualty and for many other insurance companies and for employers who were self-insured. | See ¶ 4 of the Hotz Declaration |
| 11. On March 9, 1999, Mr. Backman underwent a cervical fusion at the C4-5 with Dr. Terry Smith. | March 9, 1999 operative report (Exhibit "8") |
| 12. By December 27, 2000, RSKCO retained the law firm of Wong, Oshima & Kondo ("WOK"). | WOK letters (Exhibits "9" & "10") |
| 13. On January 16, 2001, Dr. Graham submitted a request for surgery at the C4-5 level. | Dr. Graham's Request (Exhibit "11") |
| 14. On January 17, 2001, RSKCO referred the surgical request to WOK. | RSKCO fax to WOK (Exhibit "12") |
| 15. On January 19, 2001, WOK wrote to Dr. Graham inquiring as to the necessity of surgery at the C4-5. A copy was sent to Mr. Robinson. | WOK letter (Exhibit "13") |
| 16. On January 19, 2001, WOK wrote to Dr. Peter Diamond requesting that he review Dr. Graham's surgical request. | WOK letter (Exhibit "14") |

| Facts | Evidentiary Support |
|---|---|
| 17. On January 26, 2001, Dr. Diamond requested additional medical information since it was unclear how Dr. Graham selected the C4-5 level for the surgical procedure. | Dr. Diamond's letter (Exhibit "15") |
| 18. On January 30, 2001, WOK provided Dr. Diamond with Dr. Graham's letter and chart notes. | WOK letter (Exhibit "16") |
| 19. On January 31, 2001, Mr. Robinson wrote requesting information so he could determine whether a denial of the surgical request had been made and whether he should request a hearing on this issue. | Mr. Robinson's letter (Exhibit "17") |
| 20. WOK informed Mr. Robinson that they would advise him of the decision regarding Dr. Graham's surgical request after Dr. Diamond completed his review of the records. | WOK letter (Exhibit "18") |
| 21. On March 7, 2001, Dr. Diamond completed his report to WOK. Dr. Diamond opined that he could not determine whether additional surgery at the C4-5 was necessary. Dr. Diamond recommended that a neuroradiologist review the MRI films and that EMG studies be conducted. | Dr. Diamond's report (Exhibit "19") |
| 22. WOK advised RSKCO that the DCD could rule that the EMG and review of the MRI were necessary to determine whether surgery was appropriate. | WOK letter (Exhibit "20") |
| 23. On March 16, 2001, RSKCO informed WOK to contact Mr. Robinson to request a review of the MRI and the need for an EMG test. | RSKCO letter (Exhibit "21") |
| 24. On April 11, 2001, WOK provided Mr. Robinson with a copy of Dr. Diamond's March 7, 2001 report and requested that EMG studies be conducted and the MRI reviewed by a neuroradiologist. | WOK letter (Exhibit "22") |
| 25. On May 1, 2001, Dr. Graham recommended that the MRI be reviewed by Dr. Holmes but advised that he did not agree with the necessity of the EMG tests. | Dr. Graham's Report (Exhibit "23") |

| Facts | Evidentiary Support |
|---|---|
| 26. On April 27, 2001, WOK requested that Dr. Stephen Holmes, a neuroradiologist, review the MRI films. | WOK letter (Exhibit "24") |
| 27. On June 6, 2001, Dr. Holmes opined that surgery at the C4-5 level was not necessary. | Dr. Holmes' report (Exhibit "25") |
| 28. On June 12, 2001, WOK recommended to RSKCO that Dr. Graham's surgical request be denied. | WOK letter (Exhibit "26") |
| 29. On June 22, 2001, WOK advised Mr. Backman that it was denying Dr. Graham's surgical request. A copy of the denial was provided to Dr. Graham. | WOK letter (Exhibit "27") |
| 30. On October 29, 2001, the DCD issued a decision approving the surgical request for surgery at the C4-5 based upon a review of all the medical reports. | DCD Decision filed on 10/29/01 (Exhibit "28") |
| 31. On November 14, 2001, Dr. Graham re-examined Mr. Backman.  Dr. Graham decided to order additional radiology studies before deciding whether to operate. Dr. Graham did not know if he would have recommended surgery at the C3-4 and C4-5. | Dr. Graham's deposition at pp. 48-50 (Exhibit "29") |
| 32. Mr. Backman was to see Dr. Graham on January 2, 2002 but died on that day. | Dr. Graham's deposition pp. 54-55 (Exhibit "29") |
| 33. Dr. Graham does not know whether he would have recommended surgery to Mr. Backman. | Dr. Graham's deposition pp. 50-51 (Exhibit "29") |
| 34. The Decision was issued on June 25, 2003 awarding workers' compensation death benefits, permanent partial disability ("PPD") benefits. | DCD Decision filed on June 25, 2003 (Exhibit "30") |
| 35. On May 31, 2003, Continental Casualty sold all the common stock of RSKCO to Cunningham Lindsey U.S., Inc. ("Cunningham Lindsey").  After the sale, employees of Continental Casualty took over from employees of RSKCO the responsibility of handling Mr. Backman's workers' compensation claim. | See ¶ 5 of the Hotz Declaration |
| 36. On August 29, 2003, the LAB ordered that payment of PPD benefits be stayed. | LAB Order (Exhibit "31") |

| Facts | Evidentiary Support |
|-------|---------------------|
| 37. The Amended D&O found that the DCD erred in awarding PPD benefits to Plaintiffs. | Decision and Order (Exhibit "32") |
| 38. The DCD found that certain workers' compensation benefits should have been paid to Plaintiffs within 31 days of August 29, 2003 but payment was not made until October 3, 2003. | DCD Decision filed on February 11, 2004 (Exhibit "33") |
| 39. On December 15, 2005, a hearing was held at the DCD to determine whether Plaintiffs should be awarded penalties for late payment of benefits. The last check was mailed to Plaintiffs was dated September 2, 2005. Plaintiffs did not receive another check until October 20, 2005. | DCD Decision filed on February 11, 2004 (Exhibit "34") |
| 40. RSKCO met the standard of care in adjusting Mr. Backman's workers' compensation claim. RSKCO appropriately retained WOK. RSKCO provided Dr. Graham's surgery request to WOK in a timely manner. It was appropriate for RSKCO to follow WOK 's advice to have the surgical request reviewed by Dr. Diamond and, subsequently, by Dr. Holmes. It was appropriate to deny the surgical request. There was no delay in denying Dr. Graham's surgical request. | See ¶¶ 38, 39, 42, 43, 44, 45, 47 & 48 of the Declaration of Robert Kessner |
| 41. There was no bad faith in failing to pay PPD benefits. | See ¶¶ 33, 34,36 & 43 of the Declaration of Robert Kessner |

DATED:  Honolulu, Hawaii, February 15, 2006.

/s/ Edquon Lee
GEORGE W. BRANDT
STEFAN M. REINKE
BONNIE L. MOORE
EDQUON LEE
Attorneys for Defendant
RSKCO SERVICES, INC.