ORIGINAL

LSE

EJS

Of Counsel:
LAW OFFICE OF ROBERT D. KAWAMURA
Attorneys At Law

ROBERT D. KAWAMURA 4537-0
550 Halekauwila Street
Suite 107
Honolulu, Hawaii    96813
Telephone: (808) 523-7777
Facsimile: (808) 523-3780

Attorneys for Plaintiffs
JULIA M. BACKMAN, individually and on
Behalf of the ESTATE OF DANIEL VERNON BACKMAN,
Deceased, and as Next Friend to KELLY KEIKO
VALENE BACKMAN and JODI LEIGH YACHIYO BACKMAN,
Minors

## IN THE CIRCUIT COURT OF THE FIRST CIRCUIT

## STATE OF HAWAI'I

| | |
|---|---|
| JULIA M. BACKMAN, individually and on Behalf of the ESTATE OF DANIEL VERNON BACKMAN, and as Next Friend to KELLY KEIKO VALENE BACKMAN and JODI LEIGH YACHIYO BACKMAN, Minors, | Civil No. 03-1-2190-10(GWBC) (Contract) |
| Plaintiffs, | **FIRST AMENDED COMPLAINT;** SUMMONS |
| vs. | |
| RSKCO SERVICES, INC., a Illinois corporation; JOHN DOES 1-10; JANE DOES 1-10; DOE PARTNERSHIPS 1-10; DOE CORPORATIONS 1-10; DOE LIMITED LIABILITY ENTITIES 1-10; DOE "NON-PROFIT" CORPORATIONS 1-10; and DOE GOVERNMENTAL ENTITIES 1-10, | |
| Defendants. | |

## FIRST AMENDED COMPLAINT

EXHIBIT 2

Plaintiffs JULIA M. BACKMAN, individually and on Behalf of the ESTATE OF DANIEL VERNON BACKMAN, deceased, and as Next Friend to KELLY KEIKO VALENE BACKMAN and JODI LEIGH YACHIYO BACKMAN, Minors (collectively referred to as "Plaintiffs"), by and through their attorneys, Law Office of Robert D. Kawamura, hereby bring this First Amended Complaint ("complaint"), against the above-entitled Defendants, and in doing so, allege and aver as follows:

**PRELIMINARY STATEMENT**

1.    Plaintiffs have been severely and permanently damaged as a result of the bad faith insurance claims practices committed by Defendant RSKCO Services, Inc. in the handling of the worker's compensation claim of Daniel Vernon Backman, an insurance claims investigator, now deceased. Defendant RSKCO Services, Inc. intentionally, wrongly, maliciously and repeatedly denied a physician recommended surgery request for Daniel Vernon Backman, despite a statutorily imposed approval of the surgery request resulting from Defendant RSKCO's failure to timely deny the request, and in doing so, Defendant RSKCO submitted only selective medical records to independent medical examination doctors, it hired, while withholding from said doctors medical records supporting surgery for Daniel Vernon Backman, with a goal of denying his surgery request, resulting in further and lengthy delays in getting his much needed surgery, resulting in severe

pain, suffering, emotional distress and ultimately resulting in the death of Daniel Vernon Backman.  Mr. Backman left a wife and two minor children.

## JURISDICTION

2.  All of the acts and omissions alleged herein occurred within the jurisdiction of this Honorable Court and the amount sought by this complaint exceeds the minimum jurisdictional requirement of this court, exclusive of interest, attorney's fees and costs.

## PARTIES

3.  Plaintiffs JULIA M. BACKMAN, individually and on Behalf of the ESTATE OF DANIEL VERNON BACKMAN, deceased, and as Next Friend to KELLY KEIKO VALENE BACKMAN and JODI LEIGH YACHIYO BACKMAN, minors, are, were or have been at all material times hereto residents of the State of Hawaii ("Plaintiffs").  At all material times hereto, Plaintiff JULIA M. BACKMAN was married to DANIEL VERNON BACKMAN, now deceased, and together their minor children KELLY KEIKO VALENE BACKMAN and JODI LEIGH YACHIYO BACKMAN, are Plaintiffs.

4.  Plaintiff THE ESTATE OF DANIEL VERNON BACKMAN, DECEASED, is the estate of Daniel Vernon Backman ("BACKMAN"), who at all material times hereto was employed by First Insurance Company of Hawaii, Ltd., and who had a worker's compensation claim being handled by Defendant RSKCO Services, Inc.

5.   Plaintiffs have each been damaged as a result of the bad faith conduct, intentional and negligent infliction of emotional distress, breach of contract, and other acts and omissions committed by Defendants above-named, as alleged herein.

6.   At all times material herein, Defendant RSKCO Services, Inc., an Illinois corporation, was doing business in the City and County of Honolulu, State of Hawaii as "RSKCO" ("Defendant RSKCO"), processing and adjusting insurance claims in the State of Hawaii.

7.   Defendants JOHN DOES 1-10; JANE DOES 1-10; DOE PARTNERSHIPS 1-10; DOE CORPORATIONS 1-10; DOE LIMITED LIABILITY ENTITIES 1-10; DOE "NON-PROFIT" CORPORATIONS 1-10; and DOE GOVERNMENTAL ENTITIES 1-10 (collectively referred to as "DOE DEFENDANTS") are sued herein under fictitious names for the reason that their true names, capacities and responsibilities are presently unknown to Plaintiffs, but that they are persons or entities who are in some manner presently unknown to Plaintiffs and who engaged in the activities alleged herein; and/or are in some manner responsible for the injuries and damages to Plaintiffs; and/or are persons who conducted some activity in a negligent and/or willful manner or who failed to fulfill a duty or obligation, which conduct or omission to act was the proximate cause of injuries or damages to Plaintiffs; and/or were in some manner related to the previously named Defendants engaged in the activities alleged herein; and Plaintiffs ask to insert their

4

true names and capacities, activities, and/or responsibilities, whether individual or corporate or other, when the same are ascertained.

## FACTUAL ALLEGATIONS

8. At all material times herein and including July 31, 1997, BACKMAN was employed by First Insurance Company of Hawaii, Ltd.

9. On July 31, 1997, First Insurance Company of Hawaii, Ltd. had a contract with Defendant RSKCO whereby Defendant RSKCO had an obligation to provide worker's compensation insurance coverage and/or claims management and/or claims adjusting and/or claims assistance for the benefit of the employees of First Insurance Company of Hawaii, Ltd. ("the contract").

10. On July 31, 1997, BACKMAN suffered personal injuries to his neck ("the injury") in an accident arising out of and in the course of his employment with First Insurance Company of Hawaii, Ltd. BACKMAN filed a worker's compensation claim with Defendant RSKCO for this injury ("the worker's compensation claim"). Defendant RSKCO's claim number for this claim is 2J029128. As a result of the injury, BACKMAN was temporarily and totally disabled from work from (waiting period 1/4/99 to 1/6/99) 1/7/99 through 4/23/99; 11/2/99 through 1/10/2000; 1/18/2000 forward.

11. On January 25, 1999, a pre-operative MRI showed that BACKMAN's C3-4 disc bulged very mildly on the left and also showed the presence of a midline C4-5 protrusion of disc material which was suspected to be a small focal midline herniation slightly compressing the ventral aspect of the cervical cord.

12. On March 9, 1999, BACKMAN underwent anterior cervical fusion at the C4-5 level with anterior diskectomy and foraminotomy at the C4-5 level with iliac bone graft ("the bone graft").

13. Defendant RSKCO accepted the worker's compensation claim and paid for the 3-9-99 surgery.

14. On April 5, 1999, cervical spine x-rays showed suspected incomplete incorporation of the bone plug to the C4 and C5 vertebral bodies, the anterior portion of the bone plug appeared to have separated from the remaining bone plug localized to the C4-5 disc level and the anterior portion of the bone plug measuring approximately 15 x 7 mm appeared to have migrated slightly cranially. Essentially, there was a partial collapse and ventral protrusion of the bone graft.

15. Before and since the March 3, 1999 surgery, BACKMAN been taking various prescribed pain medication for his cervical injuries, however even after the March 3, 1999 surgery his symptoms and pain level were increasing and therefore BACKMAN and his doctors wanted to get him off the medication. Given the bone plug problem that was causing him increased pain and

discomfort, BACKMAN's doctors opined that surgery should be performed so that BACKMAN would feel less pain and not need the medication in the future.

16. On December 15, 1999, a post-operative MRI was performed and revealed that new injuries were present in BACKMAN's cervical spine, namely a suspected disc herniation, a C3-4 small broad based posterior disc protrusion, and minimal diffuse annular bulges at C5-6 and C6-7.    In addition, Jon Graham, M.D. interpreted the MRI to show "evidence of fusion of C4-5 with persisting loss of cervical lordosis, as also noted on the January study.    The canal at C4-5 appears to be well decompressed in the midline with no significant cord compression. The small osteophyte noted at C5-6 appears to be unchanged.    At C4-5 there was stenosis of both lateral recesses, left greater than right, due to residual osteophytes."

17. BACKMAN developed a prescription narcotic dependency on his medication.

18. BACKMAN's debilitating symptoms in his neck and upper extremities had not improved with the use of conservative therapy and therefore surgery was warranted to help reduce the radiating neck pain and permit BACKMAN to reduce his narcotic medication needs.

19. On February 8, 2000, David M. Robinson, Esq. wrote to Defendant RSKCO on behalf of BACKMAN submitting a

"psychological claim for anxiety attacks/stress, under the original work injury of July 31, 1997."

20. Shortly thereafter, Defendant RSKCO in an undated letter to David M. Robinson, Esq., agreed to accept the psychological claim "as the natural sequelae of the July 31, 1997 accident."

21. On January 16, 2001, Jon Graham, M.D. requested authorization from Defendant RSKCO to perform surgery at the C4-5 level relating to radiculopathy at C5 ("the surgery request").

22. On January 26, 2001, Defendant RSKCO asked Peter Diamond, M.D. to comment on Dr. Graham's surgery request and Dr. Diamond advised Defendant RSKCO that "With regard to the need for further non-surgical treatment, I believe his non-surgical options have been exhausted, and have not been very effective in alleviating his pain." Dr. Diamond also questioned the levels which may require surgery but at no time indicated that surgery was not indicated. Defendant RSKCO did not provide Dr. Diamond with copies of the following to review in evaluating BACKMAN's need for surgery: (1) Dr. Graham's 10-24-2000 clinical notes; (2) Dr. Graham's 12-22-2000 clinical notes; Dennis Lind, M.D.'s reports; Dean K. Otaka, M.D.'s reports.

23. Defendant RSKCO then submitted selected BACKMAN records to Stephen Holmes, M.D. to get him to give an opinion on the narrow issue of whether surgery was necessary because of potential stenosis. Defendant RSKCO intentionally withheld most

of BACKMAN's medical records, including but not limited to the 4-5-1999 x-ray or the 7-12-1999 x-ray, which documented the anterior protrusion of the bone graft and failed fusion. Instead, Defendant RSKCO provided Dr. Holmes with the 12-15-2000 MRI scan from which he opined that based on the scan he saw no definite evidence of canal stenosis or foraminal stenosis. Nevertheless, Dr. Holmes still identified other defects in BACKMAN's cervical spine including the bony protrusion at the C4-5 level, C3-4 mild diffuse annular bulge and a small central disc protrusion with associated annular tear, C4-5 tiny central protrusion, C5-6 minor disc space narrowing and minor degree of disc bulge, and C6-7 minor degree of disc space narrowing.

24. At no time did Dr. Holmes opine that surgery was not necessary or was contraindicated. He only questioned the level or levels which may require surgery.

25. On March 7, 2001, Peter Diamond, M.D. reported to Defendant RSKCO that he believed that BACKMAN's non-surgical options had been exhausted and had not been very effective in alleviating his pain, and that he could not answer Defendant RSKCO's question as to whether BACKMAN needed surgery at C4-5.

26. Section 12-15-51 of the Hawaii Administrative Rules, required that Defendant RSKCO either authorize or refuse to authorize the surgery request within seven calendar days after the postmark of the request, and failure to so respond within seven calendar days constituted an approval of the request.

27. Defendant RSKCO failed to respond to the surgery request within the seven calendar day period.

28. On June 22, 2001, approximately six months after the surgery request was made, and despite its failure to respond within the required seven calendar day period, Defendant RSKCO sent a written denial of the surgery request to Dr. Graham and to BACKMAN.

29. Despite Defendant RSKCO failing to respond to the surgery request within the required time, Defendant RSKCO repeatedly denied the request for the surgery and forced BACKMAN to enforce his rights before the Department of Labor and Industrial Relations, Disability Compensation Division, State of Hawaii.

30. As a result of the denial of BACKMAN's surgery request, BACKMAN's doctor continued to prescribe medication to help alleviate the severe pain that he was suffering from.

31. At all material times hereto, Defendant RSKCO knew or should have known that BACKMAN required surgery and without surgery BACKMAN would become further addicted to his medication and that he was in severe pain and distress.

32. Defendant RSKCO intentionally and/or negligently failed to provide all records and films to the independent medical examination physicians, who were asked to comment on the need for the subject surgery. Defendant RSKCO only provided

these physicians with selected records intending for the physicians to decide that surgery was not necessary.

33. Defendant RSKCO claimed that it was not liable for the surgery request, and requested a credit on temporary total disability payments made to BACKMAN after Dr. Diamond's 3-7-2001 independent record review evaluation. Defendant RSKCO did not send a written notice of its intent to terminate TTD benefits as required by Section 386-31(b) HRS. Defendant RSKCO also did not provide notice of this position prior to the 9-25-2001 worker's compensation hearing on Defendant RSKCO's denial of the surgery request.

34. After the September 25, 2001 hearing, the Director of the Disability Compensation Division, Department of Labor and Industrial Relations, State of Hawaii, held that BACKMAN's request for surgery was "reasonably needed medical care" and further held that Defendant RSKCO was liable for the proposed surgery and ongoing medical care.

35. On June 25, 2003, the Director of the Disability Compensation Division, Department of Labor and Industrial Relations, State of Hawaii, supplemented the October 29, 2001 award, finding among other things, that (1) BACKMAN suffered severe and permanent injuries as a result of the July 31, 1997 work incident, a 37% ratable physical permanent partial disability of the whole person for his cervical condition and pancreatitis condition; (2) BACKMAN suffered a psychiatric

11

permanent partial disability of 10% of the whole person; (3) BACKMAN suffered a disfigurement from the neck surgery in 1999 and left iliac donor site scar payable by Defendant RSKCO; (4) BACKMAN's permanent partial disability and disfigurement awards were payable to his widow and minor dependent children; (5) BACKMAN's death was a compensable death; (6) BACKMAN developed chronic pain as a result of his work injury and neck surgery did not provide symptomatic relief and as a result he was prescribed narcotic medication to treat his chronic pain; 7) BACKMAN developed narcotic dependency; 8) BACKMAN died prior to undergoing a second neck surgery as a result of accidental combined toxic effects of medications prescribed for the work injury; 9) a causal relationship exists between BACKMAN's initial injury and his demise from toxic combination of prescription narcotic medications and other medications; 10) BACKMAN's widow and his minor dependent children are awarded death benefits pursuant to Sections 386-41 and 386-43, HRS; 11) Defendant RSKCO shall pay for such past medical care, services and supplies for treatments through BACKMAN's demise on January 2, 2002; 12) Defendant RSKCO shall pay temporary total disability compensation to BACKMAN's estate; 13) Defendant RSKCO shall pay to BACKMAN's surviving spouse weekly compensation in the amount of $59,919.60 for BACKMAN's permanent partial disability; 14) Defendant RSKCO shall pay to BACKMAN's surviving spouse a lump sum of $500.00 for BACKMAN's disfigurement; 15) Defendant RSKCO shall pay BACKMAN's

funeral expenses not to exceed $5,010.00 and burial expenses not to exceed $2,505.00; 16) Defendant RSKCO shall pay to BACKMAN's surviving spouse and surviving minor children weekly compensation and death benefits for a total of $156,312.00; 17) Defendant RSKCO shall pay to BACKMAN's surviving spouse for the benefit of BACKMAN's surviving minor children the sum of $88,319.14; 18) Defendant RSKCO shall pay to BACKMAN's surviving spouse for the benefit of BACKMAN's surviving minor child, Jodi L.Y. Backman, the sum of $83,904.77; 19) Defendant RSKCO shall reimburse the costs of James R. Langworthy, M.D.'s 11-01-2002 rating report and Dennis B. Lind, M.D.'s 7-17-2002 rating report. Despite these findings and its prior acts as alleged herein, Defendant RSKCO has failed and refused to pay all of said ordered compensation.

36. During his battle with Defendant RSKCO to get his surgery request approved and paid for, BACKMAN was treated with high doses of Oxycontin to alleviate his severe neck pain. He suffered from depression and anxiety and this was further exacerbated by the repeated attempts by Defendant RSKCO to deny approval of his surgery request. BACKMAN thus developed a prescription narcotic dependency and also suffered pancreatitis attributable to adverse effects from his medications. Around the time of the October 2001 worker's compensation decision, BACKMAN's doctors attempted to reduce and wean BACKMAN from his narcotic addiction to his pain medication. After the favorable decision, BACKMAN was motivated to reduce his dependence on his

medications and was placed on methadone to help wean him from his medications.

37. Following the October 2001 decision, BACKMAN had an appointment relating to the proposed surgery but unfortunately died on January 2, 2002 as a result of the combined toxic effects of medication prescribed for his work injury.

38. On June 25, 2003, the Director for the Department of Labor and Industrial Relations, Disability Compensation Division, held that "A causal relationship between the initial neck injury and his demise from toxic combination of prescription narcotic medications and other medications has been established."

39. Defendant RSKCO engaged in other conduct intended to result or aid in the thwarting of BACKMAN's and his family's claims.

## COUNT I - Bad Faith Insurance Claims Practice

40. Plaintiffs incorporate herein by reference all of the previous allegations contained in this First Amended Complaint as if fully set forth herein.

41. There existed a contract between First Insurance Company of Hawaii, Ltd. and Defendant RSKCO whereby Defendant RSKCO was obligated to provide worker's compensation insurance coverage for the benefit of the employees of First Insurance Company of Hawaii, Ltd., including BACKMAN ("the contract"). As an employee of First Insurance Company of Hawaii, Ltd., BACKMAN and his family were intended third-party beneficiaries of the

contract within the meaning of Hough v. Pacific Insurance, 83
Haw. 457, 468 (1996).

42. At all times material hereto, Defendant RSKCO owed
a legal duty, express and implied in the contract, that Defendant
RSKCO must act in good faith in dealing with its insured,
BACKMAN, and that a breach of that duty of good faith gives rise
to an independent tort cause of action within the meaning of Best
Place, Inc. Penn America Insurance Co., 82 Haw. 120, 132 (1996)
and Hough v. Pacific Insurance, 83 Haw. 457, 468-469 (1996).

43. At all times material hereto, Defendant RSKCO owed
BACKMAN and his family a duty of good faith and fair dealing as a
result of its fiduciary relationship to them.

44. As a direct and proximate result of each of the
acts and omissions alleged herein, Defendant RSKCO breached its
duty of good faith in handling of BACKMAN and his family's
subject worker's compensation claims.

45. Defendant RSKCO acted in bad faith when despite
not having timely responded to the surgery request, which under
the law constituted an approval of the request, it repeatedly and
vehemently made efforts to deny BACKMAN's surgery request and in
doing so submitted only selected medical records to its selected
independent medical examination physicians in an effort to cause
them to find that surgery was not needed.

46. As a direct and proximate result of each of
Defendant RSKCO's acts and omissions alleged herein, BACKMAN

sustained severe and permanent physical and emotional injuries, pain, suffering, actual economic injury and died, thereby damaging Plaintiffs, entitling them to a judgment against Defendants, jointly and severally, in amounts to be shown at trial.

47. Following BACKMAN's death, Defendant RSKCO has also failed to pay the compensation benefits which it was ordered to pay to Plaintiffs on or before ten days following the Labor and Industrial Relations' Appeals Board's August 29, 2003 decision.

48. Following BACKMAN's death, Defendant RSKCO also failed and refused to pay permanent disability compensation due under Section 386-32, Hawaii Revised Statutes and/or timely pay the late payment penalty under Sections 386-91 and 386-92 Hawaii Revised Statutes. These latest acts amply exemplify Defendant RSKCO's pattern of past and continuing bad faith conduct in persisting in the thwarting of Plaintiffs' claims.

## COUNT II - Breach of Contract

49. Plaintiffs incorporate herein by reference all of the previous allegations contained in this First Amended Complaint as if fully set forth herein.

50. There existed a worker's compensation insurance contract between First Insurance Company of Hawaii, Ltd. and Defendants whereby Defendants were obligated to provide worker's compensation insurance coverage for the benefit of the employees

of First Insurance Company of Hawaii, Ltd., including BACKMAN. As an employee of First Insurance Company of Hawaii, Ltd., BACKMAN was an intended third-party beneficiary of the contract within the meaning of Hough v. Pacific Insurance, 83 Haw. 457, 468-469 (1996).

51. Defendants owed express and implied duties under the contract to provide benefits and rights to BACKMAN, however Defendants breached the contract by intentionally and/or negligently denying BACKMAN the benefits and rights afforded to him by the contact, thereby damaging Plaintiffs.

52. As a direct and proximate result of each of the Defendant's acts and omissions alleged herein, BACKMAN sustained severe and permanent physical and emotional injuries, pain, suffering, actual economic injury and died, thereby damaging Plaintiffs, entitling them to a judgment against Defendants, jointly and severally, in amounts to be shown at trial.

## COUNT III - Negligent/Intentional Infliction of Emotional Distress

53. Plaintiffs incorporate herein by reference all of the previous allegations contained in this First Amended Complaint as if fully set forth herein.

54. Defendants intentionally and/or negligently engaged in the aforementioned conduct intending to deny the surgery request and to deny Plaintiffs' further benefits, when it knew or should have known that such conduct could cause Plaintiffs to suffer extreme anxiety and grief.

55. As a result of each of the acts and omissions alleged herein, Plaintiffs have each suffered severe and permanent emotional distress, anxiety and grief, entitling them to a judgment against Defendants, jointly and severally, in amounts to be shown at trial.

## COUNT IV – LOSS OF CONSORTIUM

56. Plaintiffs incorporate herein by reference all of the previous allegations contained in this First Amended Complaint as if fully set forth herein.

57. As a direct and proximate result of Defendants' aforementioned acts and omissions and the resulting pain, suffering, emotional distress and death of DANIEL VERNON BACKMAN, Plaintiffs have each suffered and continue to suffer from the loss of love and affection, loss of society, companionship, consortium and protection, loss of filial care and attention and loss of familial care, guidance, education, and financial support of decedent DANIEL VERNON BACKMAN.

58. At all times material herein, Plaintiffs JULIA M. BACKMAN, KELLY KEIKO VALENE BACKMAN and JODI LEIGH YACHIYO BACKMAN were each dependent upon DANIEL VERNON BACKMAN, for love, support, guidance, protection, solace, filial care, familial care, education, companionship, affection, financial support, and in other ways in which a wife and children are dependent upon their husband and father, respectively.

59. As a result thereof, Plaintiffs have each been permanently and severely damaged and are entitled to a Judgment against Defendants, jointly and severally, in amounts to be shown at trial.

**COUNT V - Punitive Damages**

60. Plaintiffs incorporate herein by reference all of the previous allegations contained in this First Amended Complaint as if fully set forth herein.

61. Each of Defendants' aforementioned acts and omissions alleged herein, alone and in combination, were knowing, intentional, wilful, wanton, reckless or done with a deliberate indifference to the rights of Plaintiffs, entitling them to a Judgment against Defendants, jointly and severally, with an award of punitive damages in such amounts as shall be shown at trial.

WHEREFORE Plaintiffs respectfully request that judgment be entered in their favor and against Defendants, jointly and severally, awarding damages not heretofore recovered as worker's compensation benefits, as follows:

(a)  Actual damages or Compensatory damages;

(b)  Special damages;

(c)  General damages;

(d)  Punitive damages;

(e)  Attorneys' fees and costs;

(f)  Pre-judgment and post-judgment interest; and

(g)   Such other and further relief as this Honorable

Court deems just and proper.

Dated:  Honolulu, Hawaii, ___November 26, 2003___.

ROBERT D. KAWAMURA

Attorney for Plaintiffs
JULIA  M. BACKMAN,
individually and on Behalf of
the ESTATE OF DANIEL VERNON
BACKMAN, deceased, and as Next
Friend to KELLY KEIKO VALENE
BACKMAN and JODI LEIGH YACHIYO
BACKMAN, Minors

IN THE CIRCUIT COURT OF THE FIRST CIRCUIT

STATE OF HAWAI'I

| | |
|---|---|
| JULIA M. BACKMAN, individually and on Behalf of the ESTATE OF DANIEL VERNON BACKMAN, and as Next Friend to KELLY KEIKO VALENE BACKMAN and JODI LEIGH YACHIYO BACKMAN, Minors,<br><br>            Plaintiffs,<br><br>     vs.<br><br>RSKCO SERVICES, INC., a Illinois corporation; JOHN DOES 1-10; JANE DOES 1-10; DOE PARTNERSHIPS 1-10; DOE CORPORATIONS 1-10; DOE LIMITED LIABILITY ENTITIES 1-10; DOE "NON-PROFIT" CORPORATIONS 1-10; and DOE GOVERNMENTAL ENTITIES 1-10,<br><br>            Defendants. | Civil No. 03-1-2190-10 (GWBC)<br>(Contract)<br><br>**SUMMONS** |

**SUMMONS**

STATE OF HAWAII

To the above-named Defendants:

You are hereby summoned and required to serve upon LAW OFFICE OF ROBERT D. KAWAMURA, Plaintiffs' attorneys, whose address is 550 Halekauwila Street, Suite 107, Honolulu, Hawaii 96813, an answer to the First Amended Complaint which is herewith served upon you, within twenty (20) days after service of this Summons upon you, exclusive of the day of service. If fail to do so, judgment by default will be taken against you for the relief demanded in the First Amended Complaint.

21

This summons shall not be personally delivered between 10:00 p.m. and 6:00 a.m. on premises not open to the general public, unless a judge of the above-entitled court permits, in writing on this summons, personal delivery during those hours.

A failure to obey this summons may result in an entry of default and default judgment against the disobeying person or party.

In accordance with the Americans with Disabilities Act, and other applicable state and federal laws, if you require a reasonable accommodation for a disability, please contact the ADA Coordinator at the First Circuit Court Administration Office at PHONE NO. 539-4333, FAX 539-4322, or TTY 539-4853, at least ten (10) working days prior to your hearing or appointment date.

Dated:  Honolulu, Hawaii, _____ NOV 26 2003 _____.


_____
Clerk of the above-entitled Court