STATE OF HAWAII
DEPARTMENT OF LABOR AND INDUSTRIAL RELATIONS
DISABILITY COMPENSATION DIVISION
830 PUNCHBOWL STREET, ROOM 209
HONOLULU, HAWAII 96813

Claimant: DANIEL V BACKMAN
94 872 LUMIHOLOI ST
WAIPAHU HI 96797

Employer: FIRST INS CO OF HAW LTD
ATTN PAYROLL DEPT
BOX 2866
HONOLULU HI 96803

Insurance Carrier: RSKCO
P O BOX 1320
HONOLULU HI 96807

# DECISION

RECEIVED NOV 1 2001 RSKCo - HONOLULU

Case No: 79900534(HON)
D/A: 7/31/97

Such investigation of the above-entitled matter having been made as the Director deems necessary, the Director makes the following

## FINDINGS OF FACT

On 7/31/97, claimant was in the employ of the above-named employer. On said date, claimant sustained a personal injury to the neck by accident arising out of and in the course of employment. Said injury was not caused by claimant's wilful intention to injure oneself or another or by intoxication. As a result of said injury, claimant was temporarily and totally disabled from work beginning (Waiting period: 1/4/99 through 1/6/99) 1/7/99 through 4/23/99; 11/2/99 through 1/10/2000; 1/18/2000 and terminating at such time as is determined by the Director that such disability has ended. The matters of permanent disability and disfigurement, if any, shall be determined at a later date. The average weekly wages of the claimant were $928.85.

A hearing was held on 9/25/2001 regarding the above-captioned case to determine whether or not proposed surgery by Jon F Graham, M.D., is reasonably needed medical care.

At the hearing, claimant states that employer has accepted physical and psychiatric injuries including aggravation of a preexisting condition resulting from the above industrial accident. Employer has paid for medical treatments by Dean K Otaka, M.D., the attending physician, Terry G Smith, M.D., and Jon F. Graham, M.D., the consulting surgeon. Employer has also paid temporary total disability benefits.

WC 10A (Rev 7/00)                28                          0678



DANIEL V BACKMAN (79900534)
Page 2

On 1/16/2001, Dr. Graham requested authorization from employer to perform surgery at the C4-5 level because of radiculopathy at the C5. Employer did not submit a denial of the 1/16/2001 request until 6/22/2001. Since employer's denial was not made within seven days of the requested surgery, employer failed to file a timely objection under Section 12-15-51 of the Workers' Compensation Medical Fee Schedule Administrative Rules (WCMFSAR).

When employer sent claimant written notice on 6/22/2001 of its denial of Dr. Graham's proposed surgery, the envelope containing the letter had no postmark markings. Therefore, employer has no basis as to when it was sent to claimant. When claimant did receive the letter, claimant was not in a competent mental state to properly request a review of employer's denial. Therefore, when claimant obtained legal representation, claimant's attorney submitted a written request to the Director to review employer's denial of Dr. Graham's proposed surgery. Claimant contends that due to the circumstance, the 14-day time period for requesting a review of employer's denial should be waived or should be relaxed.

Claimant contends that the medical evidence on file clearly justifies the need and request for surgery. Claimant underwent anterior cervical fusion at the C4-5 with anterior diskectomy and foraminotomy at the C4-5 with iliac bone graft on 3/9/99.

Cervical spine x-rays taken on 4/5/99 showed suspected incomplete incorporation of the bone plug to the C4 and C5 vertebral bodies. The anterior portion of the bone plug may be separated from the remaining bone plug localized to the C4-5 disc level and the anterior portion of the bone plug measuring approximately 15 x 7 mm may have migrated slightly cranially.

Another X-ray taken on 7/12/99 showed 4 mm anterior protrusion of bone density at the C4-5 disc level. A review of Peter E. Diamond, M.D.'s 3/7/2001 Independent Medical Evaluation (IME) and Stephen Holmes, M.D.'s 6/6/2001 consultation report indicates both doctors were not provided films of the 4/99 and 7/99 cervical spine x-rays showing problems with the 3/99 fusion. Based on the records provided to Dr. Diamond for review, Dr. Diamond was not able to answer employer's specific questions. Instead, Dr. Diamond recommended that the actual MRI films from 12/15/2000 be sent to a neuroradiologist for an independent reading in an attempt to resolve the apparent difference of opinion between the neurosurgeon (Dr. Graham) and the interpreting radiologist (Dr. Yuh). He also recommended EMG studies of the upper extremities prior to any proposed surgery to further define the source of claimant's complaints.

Dr. Holmes, the selected neuroradiologist, reviewed the 12/15/2000 MRI only. He did not review the x-ray films of the cervical spine taken in 4/99 and 7/99. His opinion is based upon incomplete medical records.

Employer states that when Dr. Graham submitted his initial request for additional surgery to the C4-5 level on 1/16/2001, employer wanted to get an IME from its own physician concerning this request before making a formal decision on the surgical request. Claimant's prior legal counsel at the time agreed to employer's request for an IME. Based on this informal

DANIEL V BACKMAN (79900534)
Page 3

RECEIVED NOV 1 2001 RSKCo - HONOLULU

understanding, employer felt there was no need for a formal denial of the requested surgery at the time of the initial request for surgery.

When its IME physician, Dr. Diamond, submitted his 3/7/2001 report, he could not formulate an opinion for employer's purposes and suggested an independent reading of the questioned 12/15/2000 MRI. That was when Dr. Holmes was asked to review the 12/15/2000 MRI. When employer received Dr. Holmes' 6/6/2001 report, employer wrote to claimant on 6/22/2001 formally denying claimant's request for surgery. Employer has no explanation as to why the denial letter envelope addressed to claimant has no postmark stamp on it.

Employer based its denial on the 12/15/2000 MRI reading and interpretation by Dr. Yuh, Dr. Holmes' independent reading of the same MRI on 6/6/2001, and Dr. Diamond's opinion that claimant's complaints of pain, numbness, and tingly sensation were not in the C4-5 distribution.

Employer therefore denies liability for further surgery to the C4-5 disc level or any treatment to any other disc levels. Employer acknowledges that it has accepted and paid for the initial surgery performed on 3/9/99. Since employer argues that it is not liable for further surgery, employer requests a credit on temporary total disability payments made to claimant after Dr. Diamond's 3/7/2001 IME. Employer has not sent claimant written notice of its intent to terminate temporary total disability benefits pursuant to Section 386-31(b), HRS.

Employer submits copies of decisions in its exhibit list supporting its position that employer should not be liable for further surgery to claimant's C4-5 level or temporary total disability benefits after 3/7/2001.

Claimant objects to termination of temporary total disability benefits and employer's credit request since no written notice was sent to claimant and that this issue was not noticed for this hearing. Claimant requests that the Director award temporary total disability on an open-ended basis in addition to approval of the requested surgery. Claimant submits a position statement with exhibits at the hearing.

Upon review of the entire matter, the Director determines that claimant's request for additional surgery to the C4-5 to be reasonably needed medical care. The Director finds employer liable for the proposed surgery and ongoing medical care. The findings and opinion of Dr. Graham are credited. Dr. Diamond was not able to formulate an opinion because of the different findings between Dr. Yuh and Dr. Graham when they reviewed the 12/15/2000 MRI. Dr. Diamond deferred to an independent neuroradiologist's review. Dr. Holmes' (independent neuroradiologist) conclusion is based solely upon his reading of the 12/15/2000 MRI which, according to Dr. Holmes, was of rather marginal quality. He did not have prior x-rays and MRI films to review and consider prior to drafting his 6/6/2001 report.

Dr. Graham, on the other hand, reviewed the 3/99, 4/99, and 7/99 x-ray films and 1/99 and 12/99 MRIs in addition to the 12/2000 MRI. In his 10/24/2000 report, Dr. Graham noted C4-5 stenosis of both lateral recesses, left greater than right due to residual osteophytes in the 12/99 study. He recommended further diagnostic imaging studies which he felt were necessary

DANIEL V BACKMAN (79900534)
Page 4

to complete his evaluation. These included flexion-extension lateral cervical spine x-rays and a repeat cervical MRI to reassess the status at the C4-5 and C5-6.

In his 1/23/2001 report, Dr. Graham indicated claimant had not improved with conservative therapy. Claimant's MRI remained unchanged. Claimant continued to have increasing neck and left arm pain which could be helped by surgery performed at the C4-5 level as referenced in his 12/22/2000 office notes.

In his 5/1/2001 report, Dr. Graham felt the proposed surgery would have a 50% to 60% chance of benefiting claimant. He indicated that the MRIs in 1999 and 2000 already showed abnormal stenosis at C4-5.

The record indicates claimant has not been able to return to work after 1/17/2000 through the present. The record is absent of persuasive medical evidence to lead the Director to conclude that claimant is able to resume work or that claimant's current disabling symptoms is unrelated to the above industrial accident.

The Director finds employer liable for ongoing medical care to include Dr. Graham's proposed surgery and liable for open-ended temporary total disability benefits. The matters of permanent disability and disfigurement, if any, shall be determined at a later date.

Thereupon the Director makes the following

### DECISION

1. Pursuant to Sections 386-21 and 386-26, HRS, said employer shall pay for such medical care, services and supplies as the nature of the injury may require, to include but not limited to recommendations proposed by Jon F Graham, M.D.

2. Pursuant to Section 386-31(b), HRS, said employer shall pay to claimant weekly compensation of $501.00 for temporary total disability beginning 1/7/99 through 4/23/99; 11/2/99 through 1/10/2000; 1/18/2000 and terminating at such time as is determined by the Director that such disability has ended.

3. The matters of permanent disability and/or disfigurement, if any, shall be determined at a later date.

BY ORDER OF THE DIRECTOR, OCTOBER 29, 2001.

Original signed by/
JANICE T. CHUN
Administrator

RECEIVED
RSKCo - HONOLULU
0681