IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| JULIA M. BACKMAN, individually and on Behalf of the ESTATE OF DANIEL VERNON BACKMAN, and as Next Friend to KELLY KEIKO VALENE BACKMAN and JODI LEIGH YACHIYO BACKMAN Minors, <br><br> Plaintiffs, <br><br> vs. <br><br> RSKCO SERVICES, INC., a Illinois corporation; JOHN DOES 1-10 JANE DOES 1-10; DOE PARTNERSHIPS 1-10, DOE CORPORATIONS 1-10; DOE LIMITED LIABILITY ENTITIES 1-10; DOE "NON-PROFIT" CORPORATIONS 1-10; and DOE GOVERNMENTAL ENTITIES 1-10, <br><br> Defendants. | CIVIL NO. 04-00348 (HG KSC) (Contract) <br><br> DECLARATION OF ROBERT C. KESSNER |

## DECLARATION OF ROBERT C. KESSNER

Robert C. Kessner, hereby declares and states as follows:

1.    That I am a resident of the City & County of Honolulu, State of Hawaii.

2.    That I am a graduate of Colgate University in 1970 and the Boston University School of Law in 1973.

3.    That I have been licensed to practice law in the state of Hawaii and in the U.S. District Court for the District of Hawaii since September 1973 and have been in continuous private practice since that time.

EXHIBIT __1__

4.    That I am a principal and founding member of the law firm of Kessner, Duca, Umebayashi, Bain & Matsunaga.

5.    That I am a member of the Hawaii State Bar Association, the American Bar Association and the American Trial Lawyers Association.

6.    That since that 1977, my personal legal practice has concentrated on the defense of workers' compensation claims brought under the laws of the state of Hawaii and the Federal Longshore and Harbor Workers' Compensation Act and its extensions.

7.    That I have been appointed as an arbitrator by the State of Hawaii, Court Annexed Arbitration Program, in over twenty (20) civil actions.

8.    That I have represented employers and insurance carriers in over 5,000 workers' compensation cases.

9.    That I have presented seminars about workers' compensation for a number of local and national organizations, including the Department of Labor & Industrial Relations, the Society of Human Resource Managers, Atlas Insurance Agency, John Mullen & Company, Inc., Sterling Education Systems, National Business Institute and Lorman Education Services.

10.    That my Martindale Hubbell rating is A-V.

11.    That I have been asked by Lyons, Brandt, Cook & Hiramatsu to review the claim files of RSKCO Services, Inc. ("RSKCO") and its attorneys, Wong, Oshima & Kondo, for a workers' compensation claim brought by Daniel Backman for a accident on July 31, 1997 during his employment by First Insurance Company of Hawaii ("FICOH"), insured by Continental Casualty.

12.     That I have reviewed documents from RSKCO, Volume I, pages 1 to 398 and Volume II, pages 399 to 940.

13.     That I have also reviewed records from Wong Oshima & Kondo, pages 1 through 3,433.

14.     That I have also reviewed the civil complaint filed by Julia M. Backman, individually and on behalf of the Estate of Daniel Vernon Backman, et al. and understand Plaintiff alleges that RSKCO acted in bad faith in denying a surgery requested for Daniel Backman and in failing to timely pay workers' compensation benefits awarded by the Director of Labor & Industrial Relations ("Director").

15.     That the files for Mr. Backman's claim indicate that he suffered a neck injury as a result of the July 31, 1997 accident, that a cervical MRI on January 25, 1999 was interpreted as showing a disc protrusion at the C4-5 level of Mr. Backman's spine, that Dr. Terry Smith performed surgery on March 9, 1999, a C4-5 anterior disectomy and foraminotomy with iliac bone graft, and that RSKCO, on behalf of Continental Casualty and FICOH accepted workers' compensation liability and paid for the surgery performed by Dr. Smith as well as temporary total disability benefits and other medical benefits to Mr. Backman.

16.     That I am aware that Mr. Backman's medical records following surgery indicate he continued to complain of pain and required narcotic medication to alleviate his pain.

17.     That on or about February 8, 2000, Claimant, through his attorney, David M. Robinson, Esq., requested workers' compensation benefits for a psychological injury resulting from the March 31, 1997 accident and liability for this condition was accepted by RSKCO on behalf of its principals.

18.     That I am is aware that RSKCO retained Wong Oshima & Kondo to address a contention by Claimant, through attorney Robinson, that he developed pancreatitis as a result of treatment for his injuries resulting from the accident of July 31, 1997.

19.     That Wong Oshima & Kondo recommended to RSKCO that pancreatitis be accepted as a compensable consequence of Mr. Backman's workers' compensation injury.

20.     That I am is aware that Wong Oshima & Kondo entered their appearance as counsel for FICO and Continental Casualty, adjusted by RSKCO on December 27, 2000.

21.     That I am aware that Dr. Jon Graham, a neurosurgeon, requested further authorization for further surgery on Mr. Backman at the C4-5 level of his spine on January 16, 2001.

22.     That on January 19, 2001, Wong Oshima & Kondo submitted an inquiry to Peter Diamond, M.D., an orthopedic surgeon, regarding Mr. Backman's need for surgery at C4-5 in view of an MRI study of the cervical spine done on December 15, 2000 which was interpreted by the radiologist as showing a fusion at C4-5.

23.     That I have reviewed Dr. Diamond's response dated January 26, 2001 in which Dr. Diamond questioned whether C4-5 was the appropriate level for further surgery for Mr. Backman.

24.     On January 30, 2001, Wong Oshima & Kondo provided further records from Dr. Graham for Dr. Diamond's review.

25.     That Dr. Diamond responded on March 7, 2001 that he could not determine whether Mr. Backman required surgery at C4-5 and recommended that a neuro-radiologist review Mr. Backman's cervical MRI studies and that EMG studies be performed.

26.    That on April 11, 2001, Wong Oshima & Kondo wrote to Attorney Robinson, advising him of the disagreement concerning the interpretation of Mr. Backman's cervical MRI and need for surgery, and requesting that Mr. Backman's cervical MRI be referred to a neuro-radiologist for review and EMG studies be considered.

27.    That Wong Oshima & Kondo referred Mr. Backman's December 15, 2000 MRI studies to Steven Holmes, M.D., a neuro-radiologist recommended by Dr. Diamond, and that Dr. Holmes reported on June 1, 2001 that he did not see changes in the C4-5 level requiring further surgery.

28.    On June 12, 2001, Wong Oshima & Kondo recommended to RSKCO that the surgery proposed for Mr. Backman by Dr. Graham be denied based on the opinions from Dr. Diamond and Dr. Holmes.

29.    On June 22, 2001, Wong Oshima & Kondo issued a written denial of surgery to Mr. Backman as attorney Robinson had submitted a notice of withdrawal as counsel for Mr. Backman.

30.    That the Director of Labor & Industrial Relations held a hearing at the Disability Compensation Division on September 25, 2001 and issued a decision on October 29, 2001 which found FICOH and the accident of July 31, 1997 responsible to pay for the surgery requested by Dr. Graham and which noted that Claimant's prior counsel (Attorney Robinson) had agreed to the request for an IME.

31.    That RSKCO did not file an appeal from said decision of September 25, 2001.

32.     That on January 2, 2002, Mr. Backman died from an accidental overdose of medications prescribed by his physicians.

33.     That the Director issued a decision on June 25, 2003 ordering the payment of permanent partial disability benefits and death benefits to the dependents of Mr. Backman.

34.     That I am aware that Wong Oshima & Kondo recommended to and timely filed an appeal for FICOH/RSK CO from the Director's said decision and filed a Motion for Stay of Payments pursuant to Section 12-47-34 of the Rules of Practice and Procedure of the Labor and Industrial Relations Appeals Board and in accordance with Section 386-91, HRS, as amended and that on August 29, 2003, the LIRAB issued an Order Granting the Motion to Stay payment of the permanent partial disability benefits awarded to Mr. Backman's dependents, thus relieving RSK CO from the obligation to pay such benefits until a full trial de novo before the LIRAB.

35.     That I am aware that the death benefits awarded to Mrs. Backman and her children were to be paid within thirty-one (31) days after August 29, 2003, that they were not paid until October 3, 2003, and that the Director ordered the payment of a twenty percent (20%) penalty by decision dated February 11, 2004, which penalty was paid.

36.     That I am aware the LIRAB issued a Decision on June 30, 2004 that found the Director was incorrect in ordering the payment of PPD benefits to Mr. Backman's dependents and affirming the Director's award of dependents' benefits.

37.     That I am aware of the decisions of the Supreme Court of Hawaii in Best Place Inc. v. Penn America Insurance Company, 83 Hawaii 120 (1996) and the Court's decision in Hough v. Pacific Insurance Company, Ltd., 83 Hawaii 457 (1996), respectively articulating

the standard for bad faith and accepting the concept of bad faith in workers' compensation claims.

38.    That I do not find RSKCO to have acted unreasonably in denying authorization for Claimant's surgery as said denial was based on the advice of legal counsel who conducted a thorough and timely investigation, including referrals to Dr. Diamond, an orthopedist, and Dr. Holmes, a neuroradiologist, to review and provide expert opinions regarding the need for Mr. Backman to have surgery at the C4 level of his spine as proposed by Dr. Graham.

39.    That I believe RSKCO reasonably relied on the opinions provided by Dr. Diamond and Dr. Holmes that they did not find surgery necessary at the C4-5 level.

40.    That I have been involved in numerous workers' compensation claims where the question of the need for surgery for an injured worker was at issue, with the injured workers' position advocating surgery and independent medical evaluators recommending against surgery.

41.    That Hawaii's workers' compensation law provides that the Director may decide whether surgery is necessary for an injured worker and, in my experience, the Director has issued decisions finding surgery appropriate and has also issued decisions denying requests for surgery.

42.    That I find RSKCO and its attorneys timely undertook the investigation whether Mr. Backman required surgery at C4-5 and maintained communication throughout with Claimant's counsel advising of the disagreement based on Dr. Diamond's and Dr. Holmes' opinions.

43.    That in accordance with the LIRAB's Order granting a stay of payments as to the permanent partial disability benefits awarded to Mr. Backman's dependents, the failure of RSK CO pay such permanent partial disability benefits was appropriate and in accordance with the workers' compensation laws of the State of Hawaii and does not constitute a bad faith claims adjusting practice.

44.    That although RSK CO's counsel did not specifically issue a denial of Dr. Graham's request for surgery under Section 12-15-51 of the Workers' Compensation Medical Fee Schedule, RSK CO's counsel did maintain ongoing communication with Claimant's counsel requesting additional medical review concerning the surgery proposed by Dr. Graham and timely provided the responses received from Dr. Diamond and Dr. Holmes to Claimant's counsel.

45.    That I am aware that the Director found the death benefits were untimely paid and on February 11, 2004, ordered a twenty percent (20%) penalty for late payment of benefits but do not consider the untimely payment, which was four (4) days late, to constitute dishonest, malicious, or oppressive conduct and does not constitute bad faith.

46.    That I am also aware that the Director issued a further Decision on January 30, 2006 which found that dependents benefits for the period September 8, 2005 through October 19, 2005 were not issued until after October 20, 2005, that such payment was untimely, and that a twenty percent (20%) penalty was appropriate.

47.    That I am aware that said payment was untimely because the adjuster assigned by RSK CO to Mr. Backman's claim was absent and the substitute failed to timely issue

the payment but consider this to be an honest mistake and oversight and does not rise to the level of dishonest, malicious, or oppressive conduct and does not constitute bad faith.

48.     That based upon the materials I have reviewed for Mr. Backman's workers' compensation claim and Dr. Graham's request for surgery and the denial of same by RSKCO, it is my professional opinion as an experienced workers' compensation attorney that RSKCO did not act in bad faith, did timely investigate the issue and based its ultimate denial of surgery on the opinions of its counsel and the expert medical opinions preferred by Dr. Diamond and Dr. Holmes.

Under penalty of perjury, I declare that the foregoing is true and correct.

Executed this day, _FEBRUARY 15_____, 2006.

_____
ROBERT C. KESSNER