ORIGINAL

Of Counsel:
KAWAMURA LAW OFFICE
Attorneys at Law

ROBERT D. KAWAMURA 4537-0
107 Lawyers Building
550 Halekauwila Street
Honolulu, Hawai'i   96813
Telephone: (808) 523-3777
Facsimile: (808) 523-3780
Email:    honolaw@aol.com

Attorney for Plaintiff
JULIA  M. BACKMAN, individually and on
Behalf of the ESTATE OF DANIEL VERNON BACKMAN,
Deceased, and as Next Friend to KELLY KEIKO
VALENE BACKMAN and JODI LEIGH YACHIYO BACKMAN,
Minors

UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

MAR 1 0 2006

at ___ o'clock and ___ min. ___ M
SUE BEITIA, CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI'I

| | |
|---|---|
| JULIA  M. BACKMAN, individually and on Behalf of the ESTATE OF DANIEL VERNON BACKMAN, and as Next Friend to KELLY KEIKO VALENE BACKMAN and JODI LEIGH YACHIYO BACKMAN, Minors, <br><br> Plaintiffs, <br><br> vs. <br><br> RSKCO SERVICES, INC., a Illinois corporation; JOHN DOES 1-10; JANE DOES 1-10; DOE PARTNERSHIPS 1-10; DOE CORPORATIONS 1-10; DOE LIMITED LIABILITY ENTITIES 1-10; DOE "NON-PROFIT" CORPORATIONS 1-10; and DOE GOVERNMENTAL ENTITIES 1-10, <br><br> Defendants. | Civil No. 04-00348 (HG KSC) (Contract) <br><br> **PLAINTIFFS' CONCISE STATEMENT OF FACTS** <br><br><br><br><br><br> **Hearing:** <br> **Date:**   March 29, 2006 <br> **Time:**   9:30 a.m. <br> **Judge:**   Kevin S.C. Chang |

## PLAINTIFFS' CONCISE STATEMENT OF FACTS

Pursuant to Rule 56.1 of the Local Rules of Practice for the United States District Court for the District of Hawaii, Plaintiffs JULIA M. BACKMAN, individually and on Behalf of the ESTATE OF DANIEL VERNON BACKMAN, Deceased, and as Next Friend to KELLY KEIKO VALENE BACKMAN and JODI LEIGH YACHIYO BACKMAN, Minors, by and through their attorney, Robert D. Kawamura, hereby submit their Concise Statement of Facts in support of its Memorandum in Opposition to Defendant RSKCO Services, Inc.'s Motion for Summary Judgment filed February 15, 2006.

| | Facts | Evidentiary Support |
|---|---|---|
| 1. | Daniel Backman, was husband and father of two minor daughters. | See ¶ 1, P 2, Findings of Fact, Dept. of Labor, 10-29-01, Ex "1". |
| 2. | On 7-41-97, Mr. Backman suffered a work related injury while working for his employer First Insurance Company of Hawaii, Ltd. | See ¶ 1, P 1, E-1 |
| 3. | RSKCO is the adjustment company for the worker's compensation carrier. | See ¶ 1, E-1; P 1, E-2 |
| 4. | In 3/99 Mr. Backman underwent a cervical fusion at C4-5 related to his work injury. | See ¶ 3, P 2, E-1 |
| 5. | The 4-5-99 x-rays showed suspected complete incorporation of bone plug, separation and may have migrated slightly cranially. | See ¶ 4, P 2; ¶ 4, P 2, E-1; Also see Ex. "6" |
| 6. | The 7-12-99 x-rays showed a 4 mm | See ¶ 5, P 2, E-1 |

|  | protrusion of bone density at the C4-5 level. | Also see Ex. "7" |
|---|---|---|
| 7. | During 10-99, Mr. Backman began to treat with psychiatrist Dennis B. Lind, M.D. for anxiety and depression and then in 11-00 he began treating with Dean Otaka, M.D. | See ¶ 4, P 2, E-2 |
| 8. | Dr. Otaka treated Mr. Backman's chronic pain with medication therapy. | See ¶ 5, P 2; ¶ 7, P 5, E-2 |
| 9. | Mr. Backman had chronic pain problems. | See ¶ 4, P 4; ¶ 7, P 5, E-2. |
| 10. | Mr. Backman's use of prescription "skyrocketed" in 2001. | See ¶ 2, P 4, E-2 |
| 11. | Mr. Backman developed a prescription narcotic dependency and also developed pancreatitis attributable to the adverse effects from his medications. | See ¶ 5, P 2; ¶ 7, P 5, E-2 |
| 12. | RSKCO paid for the treatment of Mr. Backman's chronic pain and pancreatitis. | See ¶ 5, P 2, E-2 |
| 13. | On 1-16-01, Jon Graham, M.D. requested surgery for Mr. Backman. | See ¶ 1, P 2, E-1 |
| 14. | Mr. Backman decided to undergo the surgery because he hoped that it would relieve his chronic pain and allow him to discontinue taking his pain medications. | See ¶ 6, P 2, E-2 |
| 15. | Defendant failed to deny the January 16, 2001 request within the seven day period required time under Hawaii worker's compensation law. | See ¶ 1, P 2, E-1 |
| 16. | Defendant hired Dr. Diamond to to perform an independent medical evaluation on the need for surgery. | See ¶ 1, P 3, E-1 |
| 17. | Defendant did not send the 4/99 & 7/99 x-rays showing problems with the | See ¶ 5, P 2; ¶ 6, P 3, E-1 |

3

the 3/99 fusion to Dr. Diamond or
to Dr. Holmes.

18. Based on the incomplete records,          See ¶ 5, P 2;
    Dr. Diamond was not able to answer         ¶ 1, P 3, E-1
    RSKCO's questions.

19. Dr. Diamond suggested an independent       See ¶ 3, P 3, E-1
    reading of the 12-15-00 MRI.

20. RSKCO hired Dr. Holmes to review           See ¶¶ 2- 6, P 3,
    the 12-15—00 MRI on the need for           E-1
    surgery.

21. Based on the incomplete records,           See ¶ 6, P 2, E-1
    Dr. Holmes did not review any
    x-rays.

22. Dr. Holmes reviewed the 12-15-00 MRI       See ¶ 6, P 3, E-1
    who opined that the MRI was of
    "marginal quality".

23. On October 24, 2000, Dr. Graham           See Ex. "5"
    noted in his report that "The April
    films show evidence of partial collapse
    and ventral protrusion of the graft."

24. On 6-22-01, RSKCO denied the surgery       See ¶ 2, P 3, E-1
    request based on Dr. Holmes' reading
    of MRI, Dr. Yuh's reading, and Dr.
    Diamond's Report.

25. Mr. Backman received a non-postmarked      See ¶ 2, P 3, E-1
    Denial dated 6-22-01.

26. RSKCO had no explanation as to why the     See ¶ 1, P 3, E-1
    the denial letter envelope had no
    postmark stamp on it.

27. RSKCO therefore denied liability for       See ¶ 3, P 3, E-1
    the surgery and sent Mr. Backman
    notice of its intent to terminate his
    total disability benefits.

28. Because the denial letter did not          See ¶ 2, P 2, E-1
    have any postmark on it, there
    was no basis as to when it was

4

sent to Mr. Backman.  When he
received the letter he was not in
a competent mental state to review
the denial.  He did retain an
attorney and gave the letter to the
attorney.

29.    The Director determined that the          See ¶ 6, P 3, E-1
       surgery request was reasonably
       needed medical care.

30.    The Director found RSKCO liable for        See ¶ 6, P 3, E-1
       the surgery and ongoing medical care.

31.    The Director found that Dr. Diamond        See ¶ 6, P 3, E-1
       was not able to formulate an opinion
       because of the different MRI findings
       of Dr. Yuh and Dr. Graham.

32.    The Director found that Dr. Holmes         See ¶ 6, P 3, E-1
       opinion was based on a reading of
       the MRI which was of marginal quality
       and he did not have the prior x-rays
       or MRI films to review and consider
       in drafting his 6-6-01 report.

33.    Dr. Graham reviewed the 3/99,             See ¶ 7, P 3, E-1
       4/99 and 7/99 x-rays and 1/99 and
       12/99 and 12/00 MRIs and that Dr.
       Graham noted C4-5 lateral stenosis
       of both lateral recesses, left
       greater than right due to residual
       oseophytes.

34.    Dr. Graham indicted that Mr. Backman      See ¶ 1, P 4, E-1
       had not improved with conservative
       therapy and that his MRI remained
       unchanged and that Mr. Backman
       continued to have increasing neck and
       left arm pain which could be helped
       by surgery.

35.    On 1-23-01, Dr. Graham wrote to           See Ex. "4"
       RSKCO's attorney and advised that Mr.
       Backman had not improved with
       conservative therapy and as expected
       his MRI remained unchanged and he

continued to have increasing neck
and left arm pain which could be
helped by surgery at the C4-5 level.

36.    Dr. Graham noted in his 5-1-01 report      See ¶ 2, P 4, E-1
       that the proposed surgery would
       have a 50-60% chance of benefiting
       Mr. Backman and the 1999 and 2000 MRIs
       already showed abnormal stenosis at C4-5.

37.    In his 5-1-01 letter, Dr. Graham          See Ex. "3"
       reports his concern that continued
       delays may not only undermine any
       gains to be obtained by surgery.

38.    The Director found that RSKCO was         See ¶ 4, P 4, E-1
       Liable for Mr. Backman's ongoing
       medical care to include the surgery,
       open-ended temporary total disability
       benefits.

39.    In preparing for the surgery             See ¶ 3, P 2, E-2
       Dr. Otaka began to wean Mr. Backman
       from his narcotic medications.

40.    On 11-20-2001, Dr. Otaka noted that       See ¶ 6, P 2, E-2
       Mr. Backman was upbeat due to the
       Good news concerning the surgery.

41.    Mr. Backman's friend Tiyana               See ¶ 6, P 2, E-2
       Fernandez spoke to Mr. Backman in
       December of 2001 and he appeared
       relieved and happy that he finally
       got the surgery approval and his
       spirits were good and he did not
       appear to be depressed or sad.

42.    Dr. Otaka's 4-14-2002 letter verified     See ¶ 1, P 3, E-2
       that Mr. Backman was positive and
       focused on how life would drastically
       change for the better after his
       surgery and he was extremely compliant
       with his being weaned from his
       narcotic addiction.

43.    On January 2, 2002, Mr. Backman died      See ¶ 3, P 1;

6

Case 1:04-cv-00348-KSC    Document 70    Filed 03/10/2006    Page 7 of 7

accidentally from the toxic effects          ¶ 7, P 5, E-2
of his pain medications.

44.  Mr. Backman's death was not caused by   See ¶ 3, P 1, E-2
     his willful intention to injure
     himself or another by intoxication.

45.  The autopsy report concluded that       See ¶ 3, P 2, E-2
     the cause of death was accidental
     poisoning from the toxic effects of
     his medication.

46.  Mr. Backman left a wife and two          See ¶ 3, P 1 -
     minor daughters who are his dependents   ¶ 1, P 2, E-2
     entitled to compensation under Section
     386-41, 386-42 and 386-43 HRS.

47.  RSKCO hired Jon Streltzer, M.D. as       See ¶ 8, P 3, E-2
     it claimed that Mr. Backman's death
     was a result of narcotic dependence
     and that Mr. Backman was not compliant
     with his medications.

48.  Mr. Backman's death was comensable.      See ¶ 7, P 5, E-2

49.  The Director found a causal              See ¶ 7, P 5, E-2
     Relationship between the initial
     Injury and Mr. Backman's demise from
     The toxic effects of his prescription
     pain medication had been demonstrated.

          Dated: Honolulu, Hawai'i, _March 6, 2006_____ .


                              _____
                              ROBERT D. KAWAMURA

                              Attorney for Plaintiffs
                              JULIA  M. BACKMAN,
                              individually and on Behalf of
                              the ESTATE OF DANIEL VERNON
                              BACKMAN, deceased, and as
                              Next Friend to KELLY KEIKO
                              VALENE BACKMAN and JODI LEIGH
                              YACHIYO BACKMAN, Minors

7