STATE OF HAWAII
DEPARTMENT OF LABOR AND INDUSTRIAL RELATIONS
DISABILITY COMPENSATION DIVISION
830 PUNCHBOWL STREET, ROOM 209
HONOLULU, HAWAII 96813

Claimant: SURVIVORS OF DANIEL V BACKMAN
94 872 LUMIHOLOI ST
WAIPAHU HI 96797

# DECISION

SUPPLEMENTAL TO AWARD
DATED 10/29/2001

Employer: FIRST INS CO OF HAWAII LTD

Insurance Carrier: RSKCO
ATTN WC CLAIMS
P O BOX 1320
HONOLULU HI 96807

Case No: 79900534 (HON)
D/A: 7/31/97

Further investigation of the above-entitled matter having been made as the Director deems necessary, the Director makes the following

FINDINGS OF FACT

Pursuant to an Order of the Director dated 10/29/2001, it was determined claimant had suffered a personal injury to the neck by accident arising out of and in the course of employment with the above-named employer on 7/31/97. Said Order provided benefits pursuant to Chapter 386, Hawaii Revised Statutes. Specifically, said Order provided for such medical care, services and supplies as the nature of the injury may require, temporary total disability benefits beginning (waiting period: 1/4/99 through 1/6/99) 1/7/99 through 4/23/99; 11/2/99 through 1/10/2000; and beginning 1/18/2000 and terminating when the Director determined that such disability had ended. The matters of permanent disability and disfigurement were to be determined at a later date. The recommended treatment proposed by Jon Graham, M.D., was approved. The average weekly wages of the claimant were $928.85. The Director's decision was not appealed.

On 1/2/2002, decedent died accidently from the toxic effects of his medications. His demise was not caused by decedent's willful intention to injure himself or another or by his intoxication. Decedent left the following dependents entitled to compensation benefits under Sections 386-41,

EXHIBIT 2

WC 10A (Rev 7/00)

DANIEL V BACKMAN (DECEASED) (79900534 HON)
Page 2

386-42, and 386-43, Hawaii Revised Statutes: Julia M. Backman, widow; Kelly K.V. Backman, minor dependent daughter born 5/14/93; and Jodi L.Y. Backman, minor dependent daughter born 9/18/98.

A hearing was held on 4/29/2003 regarding the above-captioned case to determine further liability for permanent partial disability, compensability of decedent's demise, and if appropriate, death benefits, and penalties pursuant to Section 386-93(a), HRS.

At the hearing, the representative for decedent's surviving widow stated that decedent was an investigator for the above employer when he suffered an aggravation of a preexisting neck condition. Employer paid for reasonably needed medical care to include the physical injury and sequela psychological injury attributable to the physical injury. Decedent's 3/9/99 neck surgery was unsuccessful and Dr. Graham proposed an additional surgical procedure on 1/16/2001. After employer's denial of this request and a hearing before the Director on 9/25/2001, it was determined that additional surgery proposed by Dr. Graham was reasonable and necessary medical care. In addition to authorization for the proposed surgery, decedent was awarded temporary total disability on an open-ended basis beginning 1/18/2000. The employer did not appeal the Director's decision.

In preparing decedent for the upcoming neck surgery, his treating physician, Dean K. Otaka, M.D., began to wean decedent from narcotic medications. On 1/2/2002, decedent unexpectedly died from toxic effects of oxycodone, methadone, and alprazolam. The autopsy report stated that the cause of death was accidental poisoning from the toxic effects of his medications. Decedent's widow and her two minor dependent daughters (hereinafter claimant) filed a Dependents' Claim for Compensation (WC-5A) dated 12/17/2002, on 12/17/2002.

Claimant contends that her husband's demise was a compensable death because he died from medications prescribed to treat his chronic pain caused by his neck injury and unsuccessful neck surgery in 1999. Decedent was referred to Dennis B. Lind, M.D., in 10/99 who treated decedent until 11/13/2000 for anxiety and depression caused by his work injury. Treatment terminated when decedent changed physician to Dr. Otaka.

Dr. Otaka treated decedent's chronic pain with medication therapy. Decedent developed a prescription narcotic dependency problem and also suffered pancreatitis attributable to adverse effects from his medications. Employer paid for treatment of decedent's chronic pain and pancreatitis.

Decedent decided to undergo a second neck surgery. He hoped that the additional surgery would relieve his chronic pain and allow him to discontinue taking medication. When decedent's second neck surgery was approved by the Director, Dr. Otaka noted in his 11/20/2001 report that decedent was upbeat due to the good news concerning the approved surgery. Decedent's neighbor's visitor, Tiyana Fernandez, wrote that she spoke to decedent in 12/2001. Decedent appeared relieved and happy that he finally got approval for surgery. Decedent's spirits were good and he did not appear to be depressed or sad. The news of decedent's unexpected demise was shocking to her.

DANIEL V BACKMAN (DECEASED) (79900534 HON)
Page 3

Dr. Otaka's 4/14/2002 letter also verifies that decedent was positive and focused on how life would drastically change for the better after his second surgery. Decedent realized that he had to be weaned from his narcotic addiction and was extremely compliant with this process. Decedent's untimely demise on 1/2/2002 was a shocking blow to him as well as his proponents who were involved in helping decedent through his struggles.

Brian Blancaflor, a longtime friend, testified that decedent was severely limited in his interaction with his children and in his participation of outdoor activities with them. Decedent's injury forced him into a sedentary lifestyle. Decedent complained about the chronic pain and difficulty sleeping. Decedent slept in a sitting position. He usually spoke to decedent once a week. He observed decedent looking sleepy and decedent appeared to doze off during their conversations.

When Brian saw decedent on Christmas Eve, decedent indicated that he felt he was "zoning out" a lot. Decedent was excited that he was undergoing surgery. Decedent wanted to be more involved with his daughters, to watch them grow up and eventually to see them have families of their own. To his knowledge, decedent was not taking street drugs.

Claimant contends that the evidence shows that the medications found in the autopsy report were prescribed for the compensable injury. Decedent's demise was accidental and was not a result of his willful intent to injure himself. As such, claimant requests reimbursement for funeral and burial expenses incurred and also requests payment of death benefits to her and decedent's surviving dependent minor children.

Claimant further requests payment of permanent partial disability and disfigurement benefits due decedent but remained unpaid because of his untimely demise. Claimant relies on the impairment ratings in file obtained from James R. Langworthy, M.D., dated 11/1/2002, and from Dr. Lind dated 7/17/2002. Dr. Langworthy rated decedent at 32% of the whole person. Decedent also suffered disfigurement from the neck surgery and from his left iliac bone donor site graft. Dr. Lind, who treated decedent for the psychiatric component of the industrial injury, reviewed his clinical notes and other medical records. Based on the record, Dr. Lind felt decedent suffered a psychiatric impairment of 35% of the whole person.

Further, claimant requests that employer reimburse claimant's attorney for the cost of Dr. Langworthy's and Dr. Lind's rating reports. Claimant also requests death benefits (funeral, burial, and dependents' benefits). Claimant requests that the Director assess employer 25% of her incurred attorney's fees and costs, alleging that employer defended its position without reasonable grounds.

A written position statement with attached exhibits (1-11c) was submitted supporting claims for death benefits, permanent partial disability, disfigurement, penalties, costs, and reimbursements.

Employer denies liability for death benefits contending that decedent's demise was a result of narcotic dependence, not the industrial accident. Employer called Jon Streltzer, M.D., to testify as to the cause of decedent's demise and the rating by Dr. Lind.

DANIEL V BACKMAN (DECEASED) (79900534 HON)
Page 4

Dr. Streltzer testified that decedent suffered from narcotic dependence. Decedent's dependence on narcotic medications to control his chronic pain was a cycle of body intolerance to pain, relief of this pain with narcotics, and withdrawal symptoms when the narcotics wear off. Then the body craves for more narcotics to dull the pain followed by withdrawal symptoms and the body craving for more medication. Relief is short-term since the body adjusts and needs more medication. There must be a constant source from which narcotics are obtained.

Narcotic dependency affects mood and family interaction. There may be a reaction to other medications taken. In the records provided to him, Dr. Streltzer noted that decedent was on narcotic medications as early as 1998 or before. Use of narcotic medications skyrocketed in 2001. Narcotic dependence is treatable. In weaning a patient, narcotic medication is replaced with non-narcotic medication. During this process, a patient needs close psychological support.

In the records he reviewed, Dr. Streltzer felt decedent was not compliant with usage of narcotic medications. Doctors treating him were concerned about possible narcotic addiction. He did not have Dr. Lind's clinical notes for review. He is unsure if decedent suffered from anxiety disorder or sleep disorder since decedent was narcotic dependent and was in chronic pain.

Dr. Streltzer felt Dr. Lind's impairment rating was inappropriate and was based upon decedent's narcotic dependency before treatment for this condition was initiated and completed. The records do reflect that decedent had narcotic medication dependency and chronic pain problems. Dr. Streltzer was not able to provide his own rating based upon the records he reviewed.

Relying on Dr. Streltzer's testimony and the record, employer denies liability for decedent's demise and dependents' claim for death benefits. Employer argues that decedent's narcotic dependency was not related to the work injury. Employer objects to Dr. Lind's rating report of 7/17/2002. Dr. Lind did not treat decedent after 11/13/2000. Dr. Streltzer felt Dr. Lind's evaluation was skewed because it was based upon decedent's narcotic dependency before any treatment was provided to try and wean decedent off prescription narcotics. Decedent's impairment could conceivably be much lower with appropriate treatment for narcotic dependency before being evaluated.

Employer also contends that it should be entitled to an offset of permanent partial disability for the neck injury evidenced by the Stipulation and Settlement Agreement and Order entered into by decedent and his employer on 7/26/91 for a work-related neck injury of 10/12/88. Decedent was paid $13,547.04 for permanent partial disability related to the neck injury.

Employer also requests that the Special Compensation Fund (hereinafter the Fund) be joined as a liable party for permanent partial disability resulting from the above work injury based upon the award for the 1988 neck injury. On 11/15/2002, employer provided written notice to the Fund asking for contribution by the Fund based upon Dr. Langworthy's 11/1/2002 rating report that claimant's attorney had obtained but not provided to employer at

DANIEL V BACKMAN (DECEASED) (79900534 HON)
Page 5

the time of the letter. The Fund informed employer that no action would be taken until it received a rating report justifying the Fund's liability. Employer did not get a copy of Dr. Langworthy's rating until 4/14/2003 at which time a copy was sent to the Fund. The Fund was not able to prepare for and attend the above-scheduled hearing on such short notice.

Employer submits its exhibit list (1-16) in support of its arguments and position at the hearing.

Employer submitted a post-hearing letter dated 4/30/2003. Claimant's representative submitted a rebuttal to the 4/30/2003 letter on 5/1/2003.

Upon review of the entire matter, the Director renders the following conclusions. The Director determines that decedent did suffer a rateable cervical condition at the time of his demise. Dr. Langworthy's 11/1/2002 rating is credited in the Director arriving at an award of 37% permanent partial disability of the whole person for decedent's cervical condition. Employer is allowed to offset the $13,547.04 previously paid to decedent.

Regarding a rateable psychiatric condition at the time of decedent's demise, the Director determines, based upon the record, that decedent suffered a psychiatric impairment. However, the Director cannot credit the impairment percentage proposed by Dr. Lind in light of the fact that this was an estimate based upon limited treatment from 10/18/99 through 11/13/2000. There is no indication from the 7/17/2002 report of the date of medical stability for the psychiatric condition. Dr. Streltzer opined that narcotic dependency could be treated.

There is no evidence on record to support a conclusion that decedent would have had full recovery from narcotic dependency with treatment. With treatment, it is conceivable that the percentage of impairment would not be as high. The Director determines that decedent suffered a psychiatric impairment of 10% of the whole person payable by employer. Decedent also suffered disfigurement from the neck surgery in 1999 and left iliac donor site scar.

Decedent's permanent partial disability and disfigurement awards are payable to decedent's widow and minor dependent children pursuant to Section 386-34, HRS. The matter of apportionment of permanent partial disability attributable to the above work injury with the Fund shall be determined at a later hearing.

Regarding compensability of decedent's demise, the Director determines that it is a compensable death based on the record. Decedent developed chronic pain as a result of the work injury and neck surgery that did not provide symptomatic relief. As a result, decedent was prescribed narcotic medications to treat the chronic pain. Decedent developed narcotic dependency. Prior to undergoing a second neck surgery, decedent died as a result of accidental combined toxic effects of his medications, oxycodone, methadone, and alprazolam. A causal relationship between the initial neck injury and his demise from toxic combination of prescription narcotic medications and other medications has been established. Decedent's widow and

DANIEL V BACKMAN (DECEASED) (79900534 HON)
Page 6

minor dependent children are awarded death benefits pursuant to Sections 386-41 through 386-43, HRS. Apportionment of death benefits with the Fund, if appropriate, shall be determined at a later hearing.

The Director determines that employer shall reimburse claimant's attorney for the cost of the ratings by Dr. Langworthy and Dr. Lind since they are the only ratings in file and were used in determining the above award. However, the Director does not find it appropriate to assess employer 25% of claimant's attorney's fees and costs under Section 386-93(a), HRS.

Thereupon the Director makes the following

## DECISION

1. Pursuant to Sections 386-21 and 386-26, HRS, said employer shall pay for such medical care, services and supplies as the nature of the neck injury and resulting chronic pain syndrome may require, to include treatments through decedent's untimely demise on 1/2/2002.

2. Pursuant to Section 386-31(b), HRS, said employer shall pay to claimant weekly compensation of $501.00 for temporary total disability from work beginning 1/7/99 through 4/23/99; 11/2/99 through 1/10/2000; 1/18/2000 through 1/2/2002; for 127.5714 weeks, for a total of $63,913.27.

3. Pursuant to Section 386-32(a), HRS, said employer shall pay to surviving spouse weekly compensation of $501.00 for 47% permanent partial disability of the whole person (37% cervical and 10% psychiatric) beginning 1/3/2002 for 119.6000 weeks, for a total of $59,919.60 as a result of an offset in the amount of $13,547.04 previously paid to decedent for a cervical condition.

4. Pursuant to Section 386-32(a), HRS, said employer shall pay to surviving spouse one lump sum of $500.00 for disfigurement as follows: 4 cm x 1 mm surgical scar, anterior neck; 4 cm x 2 mm donor site scar, left iliac crest.

5. Pursuant to Section 386-41(a), HRS, said employer shall pay funeral expenses not to exceed $5,010.00 to the mortician and burial expenses not to exceed $2,505.00 to the cemetery.

6. Pursuant to Sections 386-41 through 386-43, HRS, said employer shall pay to Julia M. Backman, widow; Kelly K.V. Backman, minor dependent daughter; and Jodi L.Y. Backman, minor dependent daughter, weekly compensation of $501.00 for death benefits beginning 1/3/2002 through 12/26/2007, for 312.0000 weeks, for a total of $156,312.00.

7. Pursuant to Sections 386-41 through 386-43, HRS, said employer shall pay to Julia M. Backman, widow, for the

DANIEL V BACKMAN (DECEASED) (79900534 HON)
Page 7

        benefit of Kelly K.V. Backman, minor dependent daughter and Jodi L.Y. Backman, minor dependent daughter, weekly compensation of $501.00 for death benefits beginning 12/27/2007 through 5/13/2011, for 176.2857 weeks, for a total of $88,319.14.

8. Pursuant to Sections 386-41 through 386-43, HRS, said employer shall pay to Julia M. Backman, widow, for the benefit of Jodi L.Y. Backman, minor dependent daughter, weekly compensation of $300.58 for death benefits beginning 5/14/2011 through 9/17/2016, for 279.1429 weeks, for a total of $83,904.77.

9. The claim for an assessment of 25% of claimant's attorney's fees and costs of this proceeding against employer is hereby denied.

10. The matters of apportionment of permanent disability and death benefits, if appropriate, shall be determined at a later date following a separate hearing.

11. Employer shall reimburse claimant's attorney for the cost of James R. Langworthy, M.D.'s 11/1/2002 rating report ($1,562.40) and Dennis B. Lind, M.D.'s 7/17/2002 rating report ($390.32).

Duration of dependents' benefits is subject to limitations provided under Chapter 386, HRS.

BY ORDER OF THE DIRECTOR, JUNE 25, 2003.



JANICE T. CHUN
Administrator

APPEAL: This decision may be appealed by filing a written notice of appeal with the Director of Labor and Industrial Relations or the Director's county representative within twenty days after a copy of this decision has been sent.

It is the policy of the Department of Labor and Industrial Relations that no person shall on the basis of race, color, sex, marital status, religion, creed, ethnic origin, national origin, age, disability, ancestry, arrest/court record, sexual orientation, and National Guard participation be subjected to discrimination, excluded from participation, or denied the benefits of the department's services, programs, activities, or employment.